COMMONWEALTH *vs.* FERNAND J. LACASSE.

Essex.    October 11, 1973. — December 11, 1973.

Present: HALE, C.J., ROSE, & GRANT, JJ.

*Evidence,* Relevancy and materiality, Of state of mind, As to self defense, Opinion. *Appeals Court,* Argument. *Homicide. Practice, Criminal,* Requests, Charge to jury.

At the trial of an indictment for a homicide occurring when, during a struggle between the defendant and the victim, a pistol in the possession of the defendant discharged and killed the victim, evidence, offered only to show the defendant's state of mind with respect

Commonwealth *v.* Lacasse.

to the safety device on the pistol, that he had been told that "the safety was not reliable and he should not depend on it" was irrelevant and was properly excluded where it appeared that the safety was set at the "off" position at the time of the struggle. [593-594]

An unamplified reiteration of an assignment of error in the brief of the defendant in a criminal case did not constitute an argument within Rules 1:13 and 1:15 (1) (d) of this court, which treated the assignment as waived. [594-595]

At the trial of an indictment for a homicide occurring when, during a struggle between the defendant and the victim after the defendant had struck or attempted to strike the victim's head with a pistol, it discharged and killed the victim, evidence, offered to show the defendant's state of mind on the issue of self defense, that the defendant had been told that the victim "was selling dope," was irrelevant and was properly excluded. [595-596]

At the trial of an indictment for a homicide, a question to a witness whether she felt that such criminal case was "important to what . . . [a lawyer representing the victim's family in a civil action was] doing" called for an inadmissible opinion and was properly excluded. [596 and fn. 3]

At the trial of an indictment for a homicide, there was no error in a refusal by the judge to instruct the jury respecting self defense in connection with involuntary manslaughter. [597-599]

In a prosecution for a homicide occurring when, during a struggle between the defendant and the victim after the defendant had struck or attempted to strike the victim's head with a pistol, it discharged and killed the victim, there was no merit in a contention by the defendant that the judge in his charge misled the jury by failing to distinguish adequately between the use of the pistol as a club against the victim and the discharge of the pistol as the basis of the homicide. [599]

A judge who instructed the jury in a criminal case fully and fairly as to the substance of requests by the defendant was not required to give the instructions in the form of the requests. [599]

At the trial of an indictment for a homicide occurring when, during a struggle between the defendant and the victim after the defendant had struck or attempted to strike the victim's head with a pistol, it discharged and killed the victim, it was proper to refuse, as contrary to law, a request by the defendant that, if he reasonably believed he was under attack with deadly force, he was not required to retreat, and a request by him to the effect that, if he believed that his personal safety was in peril, he was justified in producing the pistol, where there was no showing that he attempted to avoid such peril. [599-600]

INDICTMENT found and returned in the Superior Court on January 14, 1972.

The case was tried before *Bennett, J.*

*Francis J. DeMento (Thomas C. Cameron* with him) for the defendant.

*John J. Jennings,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.    The defendant was tried on an indictment charging the first degree murder of one Bruce Jordan. The jury returned a verdict of guilty of manslaughter. The case is before us on the defendant's appeal under G. L. c. 278, §§ 33A-33G. Error is alleged in the exclusion of certain evidence and in the trial judge's charge to the jury.

There was evidence from which the jury could have found the following. The decedent was a tenant in an apartment building owned by the defendant in Lawrence, Massachusetts. On December 4, 1971, he gave the defendant a rent check dated December 11, 1971. On the afternoon of Sunday, December 12, the decedent telephoned the defendant at his home in New Hampshire to inform him that he intended to leave for New Jersey the following day and that he had found a friend who would take over the apartment. The defendant expressed objection. Early that evening the defendant's son, who had been at the premises in Lawrence, talked with his father and informed him that the decedent's friend appeared to be moving his belongings into the apartment. Shortly thereafter the defendant decided to go to the apartment building himself.

The defendant testified that he took his .25 caliber Colt semi-automatic pistol with him, that the weapon was loaded, that there was a bullet in the chamber, and that the safety was off. He further testified that he always carried his gun in that fashion and that he always took the weapon with him whenever he went to his Lawrence buildings. Upon his arrival the defendant knocked on the decedent's door, received no reply, and entered briefly. No one was present in the apartment. The defendant then went to a neighbor's apartment to wait for the decedent to return.

Upon the decedent's return the defendant went to the apartment and was let in. In the apartment at this time were Lorenzo Rosado, Annette Demers, and the decedent.

Rosado was the person who had allegedly agreed with the decedent to take over the apartment. The defendant and the decedent discussed the change in tenancy, some scratches on the apartment door, and the presence of a dog in the apartment. The discussion was heated. The decedent stated that he would move out and began to disconnect his television set. The defendant then moved from the doorway to a position about two feet from the decedent. The defendant testified that the door to the apartment was still open.

The defendant further testified that at this point Rosado was seated on a couch about three feet to his side and that they were separated by a coffee table; and that he saw Rosado pull a knife from his pocket and begin to rise from the couch. The defendant then took the pistol from his pocket and either struck or attempted to strike the decedent's (not Rosado's) head with it. The defendant and the decedent then wrestled for the gun and both ended up on the floor. The defendant retained control of the weapon. As the decedent was kneeling above the defendant the gun went off, killing the decedent. Rosado left the apartment to notify the police. Rosado and Demers denied that Rosado had had a knife; no knife was found.

1. The defendant first assigns as error the trial judge's exclusion of the defendant's testimony concerning his belief, and the basis therefor, as to the reliability of the safety mechanism on his gun.

At the trial Officer McGuinness, a firearms expert called by the Commonwealth, testified that the safety on the pistol was located on the left side of the frame just below the slide and that it operated to lock the trigger. The defendant testified in his own behalf and was asked on direct examination why the safety mechanism was off when he produced the gun from his pocket. The question was excluded, and the defendant excepted. Defense counsel's offer of proof indicated that the defendant would testify that the dealer who sold him the gun had "told him that the safety was not reliable and that he should not depend on it." The excluded evidence was offered not for its truth, but rather

to show the defendant's state of mind with respect to the safety. Subsequently the defendant testified that he was relying on the uncocked hammer for safety and that he had not changed the condition of the weapon since purchasing it.

Our opinion is that the evidence concerning the gun dealer's representations was rightly excluded. While the excluded testimony was not hearsay, as it was not offered for the truth of the facts stated, it was not relevant. Defense counsel's offer of proof did not show that the safety mechanism was inoperative. Its import was that the safety was not necessarily foolproof. In other words, the offer tended to show that it would be unwise for one carrying such a loaded gun to depend entirely on the safety (switched to the "on" position) to prevent its discharge. But where, as here, the safety had been set in the "off" position the question of its reliability was no longer relevant.

The defendant did, in fact, testify later that his state of mind concerning the safety of the weapon had been that he could rely on the gun seller's instructions.[1] He added further that the safety had been off when he had purchased the gun and that he had not in any way changed the condition of the weapon until the incident in the decedent's apartment. Thus the gist of the proffered testimony was in fact received in evidence.

2. The defendant's second assignment of error is that the trial judge "compounded the error" complained of in the first assignment of error by charging the jury to focus their attention on the defendant's conduct in carrying the weapon in the condition heretofore described. The only argument on this point in the defendant's brief is an unamplified reiteration of the assignment of error. This falls far short of the requirements of Appeals Court Rules 1:13 and 1:15 (1) (d). Such a reiteration is not a substitute

---

[1] The gun seller was called by the Commonwealth and testified that he did not remember instructing the defendant that the safety was unreliable but that he "could have."

for argument, and we treat the assignment as waived. See *Commonwealth* v. *Martin,* 358 Mass. 282, 290 (1970); *Commonwealth* v. *Roberts,* 362 Mass. 357, 369 (1972).

3. The defendant testified that, as a result of a conversation between him and a neighbor of the decedent which occurred while the defendant was waiting for the decedent to return to his apartment, he had formed a belief concerning the decedent. Neither the defendant nor the neighbor was permitted to testify as to the substance of such belief. The defendant offered to prove that the neighbor had told him "that decedent was selling dope," and offered the testimony to show the defendant's state of mind and to impeach a prosecution witness.[2] The judge excluded the proffered testimony as immaterial, and the defendant saved an exception upon which he bases his third assignment of error. The defendant argues that this testimony is relevant to the issue of self defense in that it could have been found that such a belief tended to put the defendant in fear of serious bodily injury and thereby justified the production of the gun.

Although it is true that the question "whether there was reasonable cause to apprehend great bodily harm, and whether the defendant acted under such apprehension, are material issues" (*Commonwealth* v. *Barnacle,* 134 Mass. 215 [1883]), it is also true that evidence concerning the decedent's character and habits must be relevant and material to the issue of self defense. Warren on Homicide, § 229. See *Commonwealth* v. *Russ,* 232 Mass. 58, 81 (1919). Generally, such evidence is limited to the question of the decedent's reputation for quarrelsomeness or violence. *Commonwealth* v. *Connolly,* 356 Mass. 617, 626 (1970). "It is the victim's reputation and not the private opinion of a witness that is admissible." *Ibid.* Evidence of particular acts, criminal or otherwise, of a decedent is ordinarily inadmissible. Warren on Homicide, § 229, at 774-778.

---

[2] The defendant has not pressed this latter ground in his brief and we consider it waived.

Whatever belief the decedent's neighbor may have formed and communicated to the defendant concerning the decedent's alleged drug trafficking did not tend to establish that his reputation was that of a violent man. We hold that the testimony was properly excluded.

Moreover, the defendant himself apparently paid little regard to that information. The record discloses that he was asked, "After this conversation with Mrs. Levesque what was your attitude about Jordan being in the apartment?" To this the defendant responded, "I didn't care. He was leaving the following day." That statement would indicate that the defendant was placed in no greater fear of bodily harm as a result of the conversation in question. We also note that there was no evidence that the decedent in any way acted in a manner which would have warranted the initial assault by the defendant. We are of the opinion that the defendant was not prejudiced by the exclusion of this evidence.

4. The defendant's fourth assignment of error concerns the exclusion of questions put to Rosado and Demers intended to elicit a showing of bias on their part. The excluded questions dealt with the witnesses' knowledge of a civil action commenced on behalf of the decedent's family against the defendant.

With respect to Rosado, at the conclusion of the first day of his testimony, the Commonwealth withdrew its objection to the questions and the following day defense counsel pursued the matter without objection. The defendant's assignment concerning this witness' testimony is therefore wholly without merit.

With respect to Demers, defense counsel asked several questions concerning the lawyer representing the family in the civil suit. No objections were made. Counsel then asked a question calling upon the witness to state an inadmissible opinion.[3] The question was properly excluded.

---

[3] DEFENDANT'S COUNSEL: Have you ever heard of Mr. Struffolino?
THE WITNESS: Yes, I have heard of him.
DEFENDANT'S COUNSEL: Who is he?

5. The defendant's fifth assignment of error concerns the refusal of the defendant's request, made at the conclusion of the judge's charge, that the judge further charge the jury that self defense is a defense to involuntary manslaughter. The judge, in his charge, carefully explained the elements of first and second degree murder and of voluntary manslaughter. At the conclusion of this portion of the charge, he explained the requisites of self defense. He then went on to explain involuntary manslaughter in detail. Following this he defined the crime of assault and battery and instructed the jury that self defense is available as a defense to one accused of that crime.

Our opinion is that the trial judge's refusal to charge on self defense with respect to involuntary manslaughter was entirely proper.[4] The question whether involuntary manslaughter and self defense are mutually exclusive does not seem to have arisen in this Commonwealth. The defendant gives no example of a situation in which self defense could properly arise in connection with involuntary manslaughter, and we are unable to conceive of one. The defendant does not call our attention to, nor have we found, a reported decision in which an instruction on self defense was given,

| | |
|---|---|
| THE WITNESS: | He is a lawyer in Lawrence. |
| DEFENDANT'S COUNSEL: | And that is all you know about him? |
| THE WITNESS: | Yes. |
| DEFENDANT'S COUNSEL: | Do you know that he represents the Jordan family? |
| THE WITNESS: | Mrs. Jordan had said something that she wanted to get him. I think she got him. |
| DEFENDANT'S COUNSEL: | So you know who he is, but you haven't talked to him or anybody sent by him about this case. |
| THE WITNESS: | No. |
| DEFENDANT'S COUNSEL: | Do you feel that this case is important to what Mr. Struffolino is doing? |
| THE WITNESS: | That is the case we are trying here? |
| ASSISTANT DISTRICT ATTORNEY: | Objection. |
| THE JUDGE: | Sustained. |

---

[4] From our examination of the record, it appears that the judge might well have refused to instruct on self defense with respect to any of the offenses charged, there being no evidence that the defendant, who could be found to have initiated combat, availed himself of the opportunity to retreat. *Commonwealth* v. *Peterson,* 257 Mass. 473, 477-478 (1926). *Commonwealth* v. *Hartford,* 346 Mass. 482, 490 (1963). Warren on Homicide, § 154, at 708. *Id.* § 157, at 768.

or should have been given, in a case in which it was claimed that the homicide was accidental. To the contrary, see *People* v. *Manning,* 146 Cal. 100, 104 (1905); *Hayden* v. *Commonwealth,* 63 S.W. 20 (Ky. 1901); *State* v. *Malone,* 301 S.W. 2d 750 (Mo. 1957); *People* v. *Mallon,* 116 App. Div. 425, 436 (1906), aff'd mem., 189 N.Y. 520 (1907). "Self defense is an affirmative, positive, intentional act, and an instruction is properly refused which recognizes the anomalous doctrine of accidental self defense." Warren on Homicide, § 148, at 640. *State* v. *Smith,* 114 Mo. 406, 422 (1893). See also Warren, *supra,* § 338, at 278, 282. Involuntary manslaughter is an unintentional homicide, "the unlawful killing of another without malice . . . as when the death of another is caused by some unlawful act, not accompanied by any intention to take life." *Commonwealth* v. *Webster,* 5 Cush. 295, 304 (1850). Warren on Homicide, § 86. Involuntary manslaughter includes the unintentional result of wanton or reckless conduct. *Commonwealth* v. *Bouvier,* 316 Mass. 489, 494-495 (1944). *Commonwealth* v. *Hinckley, ante,* 195, 200 (1973). "To be involuntary manslaughter the killing must be unintentional. The peculiarity of involuntary manslaughter is that the killing is without criminal intent, as it is always by misadventure, and it is only made a crime because of being brought about by some negligent or unlawful act." Warren on Homicide, § 86, at 422.

The defendant at all times material to our decision held to the position that the weapon was not fired intentionally.[5] The defendant's counsel further represented at a bench

---

[5] DEFENDANT'S COUNSEL: Did you have any intention at the time you put your hand in the pocket to use the gun?

THE WITNESS: No.

\* \* \*

DEFENDANT'S COUNSEL: All right. You say he was twisting your hand and then what happened?

THE WITNESS: The gun went off.

DEFENDANT'S COUNSEL: Now, when the gun went off, what did you think?

THE WITNESS: I couldn't believe it, because I didn't think it would go off without the hammer being cocked.

conference that the defendant's conduct after taking the gun from his pocket was not in reliance on self defense. In these circumstances an argument that instructions should have been given relating self defense to involuntary manslaughter is specious. There was no error.

6. The defendant's sixth and seventh assignments of error assert that the judge's charge failed to distinguish adequately between the two batteries committed by the defendant and that he erroneously refused the defendant's request to expand his charge on this matter. The first of the two batteries to which the defendant refers is the use of the gun as a club against the decedent and the second is the discharge of the weapon which resulted in the decedent's death. The defendant maintains that the jury could have inferred from the instructions given that voluntary manslaughter could be grounded solely upon the first battery when in fact such crime could only have been founded upon the second.

From our review of the charge we find that the judge made clear to the jury that he was referring to the second battery. The very portion of the record to which the defendant's assignment of error refers us demonstrates that the judge did in fact draw this distinction when he said, " 'Every unjustified battery,' *meaning for this purpose killing or shooting,* 'every unjustified battery that results in death is at least manslaughter' " (emphasis supplied). We cannot see how the jury could have been misled.

7. Assignments of error Nos. 9, 10, 11 and 15 deal with the judge's refusal to charge as requested. While the judge did not give the instructions in the form requested, he instructed the jury fully and fairly on the substance of the requests. *Campbell* v. *Shea,* 332 Mass. 422, 425 (1955).

8. Assignment of error No. 13 is based upon facts which the jury would not be warranted in finding on the evidence and was properly refused by the court.

9. The defendant's request numbered 16 (assignment of error No. 12), that the defendant was not required to retreat if he reasonably believed he was under attack with a deadly force, is contrary to the law. *Commonwealth* v. *Leate,* 352

Mass. 452, 457 (1967). Similarly, request numbered 18 (assignment of error No. 14), to the effect that if the defendant believed his personal safety was imperiled he was justified in producing the gun, is also contrary to the law, in the absence of any showing that the defendant availed himself of any means to avoid the putative peril. *Commonwealth* v. *Leate,* 352 Mass. 452, 457 (1967).

*Judgment affirmed.*