COMMONWEALTH *vs.* KENNETH L. BARTON.

Suffolk. February 7, 1975. — April 28, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Homicide. Self-Defense.*

At a trial for homicide by shooting the victim while the victim and the defendant were in the defendant's home, there was no error in an instruction to the jury regarding self-defense, that the defendant had a duty to retreat, if possible, before using deadly force against an aggressor; following *Commonwealth* v. *Shaffer*, *ante*, 508 (1975). [517-518]

INDICTMENT found and returned in the Superior Court on September 16, 1971.

The case was tried before *Sgarzi*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David M. Skeels* for the defendant.

*Robert J. McKenna, Jr.,* Assistant District Attorney (*William A. Doherty,* Assistant District Attorney, with him) for the Commonwealth.

TAURO, C.J. The defendant was convicted of manslaughter on an indictment charging murder in the second degree. He appealed pursuant to G. L. c. 278, §§ 33A-33G, and the Appeals Court affirmed the judgment. *Commonwealth* v. *Barton,* 2 Mass. App. Ct. 898 (1974). We granted the defendant's application for further appellate review and we affirm the judgment of the Superior Court.

Briefly, the jury could have found the following: The defendant and one Ruth Ann Ventura (Ruth) had been living together until approximately five weeks before the homicide. At that time, Ruth left the defendant's home and moved in with Janet Dean, the victim.

On the day before the homicide, the defendant visited Ruth once and called her twice. He told her he wanted to talk, and it would be the "skin off . . . [her] nose and . . . [her] parents' nose" if she refused. Although she did not understand the meaning of the defendant's statement, Ruth agreed to talk with him at a later time.

On the evening preceding the homicide, the victim went out to dinner with her boyfriend, leaving Ruth at home to watch the victim's children. Later in the evening, Joseph Dean (Dean), the victim's former husband, arrived and shortly thereafter one Colin Francis McKenna, Jr. (McKenna), a recent friend of Ruth's, came to the house. The three sat and talked until the victim returned. She had been drinking and was in an argumentative mood.

At approximately 2 A.M. the victim called the defendant. Immediately after this call, she left the house in the company of her former husband, Dean. Ruth and McKenna followed them to the defendant's home, where they waited outside while the victim entered the apartment. There is some dispute as to what occurred

next. It is undisputed, however, that a short time later Ruth entered the apartment, and she and the defendant talked in the bedroom.

At some point, the victim entered the bedroom and told Ruth, "Come on, ladies, we are going home." Ruth told the victim she was going to talk a little longer, and the victim went into the kitchen. About this time the two men entered the apartment, and the defendant and Ruth joined them in the kitchen. Dean told the victim that he thought they should leave. At that point, the defendant said, "Get out of my house," and reached for a gun which he pointed at the men.

At first no one moved to leave. Then McKenna moved back a few feet, but stopped when Dean did not move. Dean again said, "Let's go," but still no one moved. The victim reached for Ruth and the defendant grabbed Ruth around the neck. The victim again reached for her and the gun went off. The victim was struck by a bullet and was killed.

The police arrived at the scene and asked the defendant what happened. He replied, "I shot her. It was an accident." He further stated, "I told her not to come over here. I had to do it."

The defendant argues on appeal that the judge incorrectly charged the jury on the critical issue of self-defense. The defendant, having made no objection nor taken exception to the charge at the trial, would ordinarily bring nothing before this court for review. *Commonwealth* v. *Concepcion*, 362 Mass. 653, 654 (1972). However we may review the instructions to determine whether there was error that created a substantial risk of miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). *Commonwealth* v. *Concepcion, supra.* In viewing the charge as a whole, *Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 (1968); *Commonwealth* v. *Benders*, 361 Mass. 704, 707 (1972), we are convinced there was no error.

There was evidence in this case which would have

warranted an instruction on justifiable homicide both in terms of accident and self-defense, although these theories are mutually exclusive. *Commonwealth* v. *Lacasse,* 1 Mass. App. Ct. 590, 597 (1973), S. C. 365 Mass. 271 (1974). The judge charged on both theories, and in his instruction on self-defense he told the jury that the defendant had a duty to retreat before responding with force.[1]

The defendant contends that this charge was error, because there is no duty to retreat if a person is assaulted in his own home. This is not the law of this Commonwealth. *Commonwealth* v. *Shaffer, ante,* 508 (1975). As we stated in the *Shaffer* case, at 512, "[O]ne assaulted in his own home does not have the unlimited right to react with deadly force without any attempt at retreat." The fact that one is assaulted in his own home, while an important factor, is just one of many factors to be considered in determining whether the use of deadly force was justified. *Ibid.* Although the judge did not specifically instruct the jury to consider that the incident occurred in the defendant's home, for reasons set forth in the *Shaffer* case, we are convinced that, in the circumstances of this case, the jury were properly guided in their deliberations and there was no miscarriage of justice.[2]

*Judgment of the Superior Court affirmed.*

[1] The instruction stated: "Sometimes we say in law that our back has to be to the wall before we can use any force to repel an attack against us. We must exhaust every avenue of escape before we can use any force to repel an aggressor. If we don't use any more force than is necessary to repel that act of aggression, then that force which we have used is justified; and we have committed no offense."

[2] We note here that the best procedure in this type of case is for the judge to instruct the jury specifically on what factors are to be considered in determining the reasonableness of the force and the necessity of retreat in the particular circumstances. See the *Shaffer* case, *supra,* at 512. However, failure to have done so here, when such an instruction was not requested at trial, does not constitute reversible error on the limited facts of this case.