**STATE**

v.

**Harvey H. BAKER.**

**No. 78–383–C.A.**

Supreme Court of Rhode Island.

July 25, 1980.

OPINION

BEVILACQUA, Chief Justice.

The defendant, Harvey Baker, was tried before a justice of the Superior Court for Providence County sitting with a jury on an indictment for murder, in violation of G.L. 1956 (1969 Reenactment) § 11–23–1, as amended by P.L. 1974, ch. 118, § 5. The jury returned a verdict of guilty of manslaughter of William Jackson, Jr. The trial justice denied defendant's motion for a new trial and sentenced Baker to a term of twenty years' imprisonment, with ten years suspended. The defendant is now before us on appeal from the judgment of conviction.

On the morning of April 12, 1977, using William Jackson's truck, Baker and Jackson moved a piece of furniture into Baker's grandmother's house. Both men consumed some beer, and Jackson then drove defendant to Friendship Street in Providence. From there defendant returned to his home where he had an epileptic seizure. After the seizure defendant fell asleep.

Later, defendant's mother awakened him to answer a phone call from his grandmother who told him that she believed that Jackson had returned to her house and had stolen money and food stamps while she lay sleeping. Baker told his grandmother that he would retrieve her property.

With that, he set out to find Jackson, and while walking on Friendship Street, he espied Jackson in an automobile. The defendant called to Jackson, who walked over to where defendant was standing in front of a liquor store. Baker asked Jackson if he had returned to Baker's grandmother's house. Jackson replied that he had. Baker then demanded of Jackson the stolen money and food stamps.

According to Baker, who testified at trial, in response to this accusation Jackson began waving his arms and speaking in a loud voice. Baker recalled that Jackson called him a liar and moved backwards off the sidewalk curb. Simultaneously, Jackson reached for the back of his pants.

Dennis J. Roberts, II, Atty. Gen., Faith A. LaSalle, Sp. Asst. Atty. Gen., for plaintiff.

Janice M. Weisfeld, Asst. Public Defender, for defendant.

At this, according to his testimony, Baker became frightened because he remembered that Jackson, who was taller and heavier than defendant, had held him at gunpoint once before, in 1976. Baker reached into his front pocket and removed a pocket knife. In quick succession, Baker slapped the knife across his thigh, whereupon the knife blade that was propped partially open with a Popsicle stick extended fully. Baker then thrust the knife forward at Jackson, thereby wounding him in the chest.

William Jackson, Jr., later succumed to the effects of his wound. Providence police arrested Baker later that day and charged him with the homicide of Jackson. While in custody defendant made a statement to police which he later introduced in evidence at trial. He admitted that he had stabbed William Jackson, Jr., but claimed that he had done so out of fear of an imminent assault on his safety.

On appeal defendant raises two issues in which he claims that the trial justice committed error (1) by not specifically instructing the jury that the state must prove beyond a reasonable doubt that defendant did not act in self-defense and (2) by refusing to permit the defense to introduce into evidence the decedent's record of convictions for violent crimes to establish the victim's reputation for violence.

I

With respect to the first issue defendant alleges that because the trial justice did not specifically instruct the jury that the state must prove the absence of self-defense beyond a reasonable doubt, the instructions were inadequate and, therefore, in violation of his due-process rights. At trial Baker requested the following instruction based upon his reading of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977):[1]

1. The defendant was tried in 1977 prior to our decision in *In re John Doe*, R.I., 390 A.2d 920 (1978).

"Once the defendant has fairly raised the defense of self defense the burden is upon the state to prove that the killing of William Jackson, Jr. was unlawful, to wit: that the defendant did not act in self defense."

Instead, the trial justice instructed the jury on the assignment of the burden of proof and on the issue of self-defense in the following manner:

"Also in all criminal cases under our law the person accused of a crime is presumed to be innocent of the charge against him; that is his constitutional right. It is the presumption that attaches to each and every one of us if we should be accused of a crime. The presumption of innocence is with the defendant at the start of the trial and remains with him throughout the trial and follows him right up to the jury room. The presumption of innocence stays with the defendant until the jury is persuaded, if they are ever persuaded, by proof beyond a reasonable doubt as to his guilt. The corollary of this, of course, is that the defendant does not have to prove that he is innocent. The burden of proof in a criminal case is on the State and it never shifts to the defendant.

"Now, the fact that Mr. Baker has testified in this matter and offered other evidence does not, of course, effect [*sic*] the proposition that the burden of proving guilt is on the State and remains on the State.

"* * *

"The State's case here has been based in part on proof by circumstantial evidence. In such a case, ladies and gentlemen, it is fundamental the evidence offered must not only be consistent with guilt, but at the same time must be inconsistent with any reasonable hypothesis of innocence.

"As I have told you, this indictment charges that Harvey Baker did on or about August 12, 1977, murder William

Jackson in violation of the laws of this State. Section 11–23–1 of the General Laws state in part that the unlawful killing of a human being with malice aforethought is murder.

"\* \* \*

"What is meant by the expression unlawful killing? The act of one person in killing another if not justifiable or excusable is unlawful.

"\* \* \*

"Homicide is excusable when it is committed in self-defense, and the jury is entitled to consider whether or not the killing of William Jackson in this case was excusable. The defendant did testify that he did cut Mr. Jackson with a knife, but that he acted in essence he said self-defense. In effect, Mr. Baker says that he stabbed Mr. Jackson. He says his act was justifiable in view of Mr. Jackson's actions.

"I instruct you that if the defendant acted in a reasonable belief that he was defending his personal safety, he was justified in his action so long as the force that he used was that which was reasonably necessary under all the circumstances to prevent injury to himself. I will repeat that. I instruct you that if the defendant acted in a reasonable belief he was defending his personal safety, he was justified in his action so long as the force that he used was that which reasonably appeared to be necessary under all the circumstances to prevent injury to himself \* \* \*.

"One does not have to wait for the first blow to be struck to act in self-defense. Accordingly, if you find that the defendant killed William Jackson but did so in self-defense, your verdict must be not guilty. Conversely, if you find that he did kill Mr. Jackson and was not acting in self-defense, your verdict must be guilty of murder in the first degree or in the second degree or manslaughter as I have defined these terms for you.

"\* \* \*

"A long while ago in 1898 our Supreme Court discussed this question of self-de-

fense and they said this, 'The rule of law upon that point is that when one is attacked by another under such circumstances as to lead him to apprehend peril to his life or great bodily harm he may kill his assailant provided he cannot otherwise protect himself as by retreating from danger, by warding off the attack, by a weapon not deadly, by disabling his adversary without killing him or in any other way protecting his own life and person.' I instruct you also that those questions in a criminal case must ordinarily be resolved in favor of the accused and in light of the accused entitles him to the benefit of reasonable doubt.

"\* \* \*

"Proof of guilt with reference to this indictment must be beyond a reasonable doubt. What do we mean by beyond a reasonable doubt? Reasonable doubt means just what those two words ought to mean as you think of their common meaning. Reasonable doubt is not a fanciful doubt nor a mere possible doubt. Reasonable doubt is an actual substantial doubt arising from the evidence or the lack of evidence."

In substance defendant contends that in telling the jurors that they must "find" self-defense to return a not-guilty verdict instead of expressly placing the burden of proof of this issue on the state, the trial justice misled the jury by implying either that the defense must bear some burden of proof on this issue or that the state need not disprove the defense in satisfaction of the beyond-a-reasonable-doubt standard but by some lesser standard.

■ It is well understood that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). Applying this principle according to the analysis that the Supreme Court employed in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), we held in *In re John Doe*, R.I., 390 A.2d 920, 926

(1978), that in a homicide case, "once the defendant introduces some evidence of self-defense, the burden of persuasion is on the prosecution to negate that defense beyond a reasonable doubt." Moreover, the Supreme Court in *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), declared that *Mullaney v. Wilbur* must be given complete retroactive effect; we have done so this term in *Infantolino v. State*, R.I., 414 A.2d 793, 796 (1980). Thus, Baker was unquestionably entitled to instructions that properly assigned the burden of proof of the issue of self-defense to the state.

■ To ascertain whether an instruction has fairly set forth for the jury the legal principles controlling a crucial factual issue, we must read the allegedly inadequate instructions in the context of the charge as a whole. *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *McInerney v. Berman*, 621 F.2d 20 (1st Cir. 1980); *State v. Verdone*, 114 R.I. 613, 337 A.2d 804 (1975); *State v. Lima*, 113 R.I. 6, 316 A.2d 501 (1974). In testing the propriety of a jury charge, the Supreme Court has recently stated that "whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom v. Montana*, 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39, 45 (1979). As we analyze the effect on defendant's constitutional rights of the instructions challenged in this court, we realize that it is not enough for us to conclude under the *Sandstrom* standard that some jurors may have interpreted the instructions as placing upon the state the burden of negating self-defense beyond a reasonable doubt unless we can also discount the possibility that any of the jurors could have reasonably construed the instructions in an impermissible manner. *Id.* at 526, 99 S.Ct. at 2460, 61 L.Ed.2d at 52.

■ Considering the charge as a whole, we believe that a reasonable juror could

have misconstrued the instructions on the issue of self-defense to the detriment of defendant's constitutional rights. Although the trial justice began by telling the jury that defendant did not have to prove his innocence and that the state bore the burden of proof in a criminal trial, when he instructed the jury on the issue of self-defense, he told the jury that Baker was admitting that he had stabbed the victim but was claiming that he had acted in self-defense. The trial justice then told the jury "if you find that the defendant killed William Jackson but did so in self-defense, your verdict must be not guilty." We believe that jurors who are told that before they can acquit they must "find" the existence of a proposition that the defendant has claimed could reasonably have concluded that the defendant bore a burden of persuading them of the existence of that proposition. *See Connolly v. Commonwealth*, —— Mass. ——, 387 N.E.2d 519 (1979). Given the trial court's choice of words, the jury could possibly have inferred that it was required to look to the defendant's case for proof of self-defense. This possibility is inconsistent with the due-process safeguard requiring the state to prove every element of the charge.

■ A direction to the jury that it must find the elements of self-defense before it may acquit is further inconsistent with the concept of proof beyond a reasonable doubt. A jury need not find that exculpatory facts do exist to return a not-guilty verdict,[2] it need only entertain a reasonable doubt about whether such facts exist. *See Notaro v. United States*, 363 F.2d 169, 176 (9th Cir. 1966) (entrapment defense); *Connolly v. Commonwealth*, —— Mass. at ——, 387 N.E.2d at 524.

In this case the issue of self-defense was a critical issue that defendant was entitled to have placed before the jury in unmistakable terms. *See In re John Doe*, R.I., 390 A.2d at 926. The trial justice was obliged to preclude the possibility that the jury

---

**2.** A jury in a civil case normally makes findings of fact by determining whether the existence of a particular fact is "likely," that is, shown to exist by a fair preponderance of the evidence introduced on that issue.

might misconstrue the law and place upon defendant the burden of proving the defense. *See, e. g., State v. Brown*, 131 N.J. Super. 228, 329 A.2d 347 (1974). His failure to incorporate in his instructions the principles annunciated in *Mullaney v. Wilbur, supra*, which we applied in *In re John Doe, supra*, raised the possibility of an unjust result in contradiction of constitutional principles. This error requires reversal.

### II

Although the inadequacy of the instructions requires reversal of defendant's conviction, we shall address defendant's second claim because of the likelihood that this question will arise again at a retrial of the crime. *See State v. Vargus*, 118 R.I. 113, 125, 373 A.2d 150, 156 (1977). Prior to trial and pursuant to defendant's request, the state provided the defense with a copy of William Jackson's record of convictions. In support of his request to have this record admitted into evidence, Baker argued before the trial justice that he was unable at that time to locate any witnesses who knew of Jackson's reputation for violence in the community.

Relying on our decision in *State v. Infantolino*, 116 R.I. 303, 335 A.2d 722 (1976), the trial justice refused to admit the record of convictions. Baker did, however, find a witness, James Johnson, who testified to the victim's reputation for violence in the community.

Nevertheless, defendant argues before us that the trial justice erred when he excluded from evidence Jackson's record of convictions of crimes of violence. He claims that the victim's criminal record was highly material evidence establishing the victim's tendency to commit acts of violence and thus substantiated the allegations that Jackson had been the aggressor and that defendant had acted in fear of him.

■ The trial justice allowed defendant to introduce evidence pertaining to both allegations. For example, defendant and another defense witness testified that William Jackson was known in the community as a violent man, someone who was "known

to hurt people." Moreover, defendant testified that Jackson had pulled a gun on him on a prior occasion. We find no fault in the trial court's decision to allow this testimony into evidence. But defendant claims that the trial justice should have admitted the evidence of Jackson's convictions which defendant knew nothing about at the time of the incident.

■ As in *State v. Infantolino*, 116 R.I. 303, 355 A.2d 722 (1976), the defendant in the case before us had no right to introduce this evidence at trial. We adhere to our evidentiary rule that proof of bad character may be shown only by general reputation and not by specific acts of misconduct. *Id.* at 314, 355 A.2d at 728; *accord, Martin v. Estrella*, 107 R.I. 247, 266 A.2d 41 (1970); *see McClellan v. State*, 264 Ark. 223, 570 S.W.2d 278 (1978); *Commonwealth v. Lacasse*, 1 Mass.App. 590, 304 N.E.2d 438 (1973). *Contra, State v. Miranda*, 176 Conn. 107, 405 A.2d 622 (1978); *Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748 (1971). *See generally* 13 Suffolk U.L.Rev. 1135 (1979). Therefore, the trial justice correctly ruled that the victim's criminal record was inadmissible.

The defendant's appeal is sustained, the judgment of conviction is vacated, and the cause is remanded to the Superior Court for a new trial.