STATE

v.

Joseph A. CARON.

No. 79–225–C.A.

Supreme Court of Rhode Island.

Dec. 15, 1980.

Dennis J. Roberts, II, Atty. Gen., Stephen Lichatin, III, Sp. Asst. Atty. Gen., Chief, Appellate Division, for plaintiff.

Goldberg, Goldberg & Goldberg, Lawrence L. Goldberg, Pawtucket, for defendant.

## OPINION

### BEVILACQUA, Chief Justice.

The defendant, Joseph A. Caron, was tried in the Superior Court for Providence and Bristol Counties on an indictment for murder in violation of G.L.1956 (1969 Reenactment) § 11–23–1, as amended by P.L. 1974, ch. 118, § 5. A jury returned a verdict finding the defendant guilty of second-degree murder. The trial justice denied defendant's motion for a new trial and sentenced the defendant to ten years' imprisonment. The defendant appeals from the judgment of conviction.

On September 24, 1977, James Caron, the victim and defendant's son, returned home from National Guard duty. At approximately 5 p. m. he and his brother John went to the neighborhood bar, located two houses down the street from the Caron home.[1] At the bar, James played some pool, watched television and apparently drank heavily. After several hours passed, James and John had an argument over some dirty clothes John had not cleaned up in the parlor at home. John became angry, left the bar, and returned home. John told his parents about the incident, and shortly thereafter, defendant and his wife went to the bar, warned James to leave his brother alone, and instructed the bartender to "shut [James] off." They also told James not to come home that night. According to witnesses, James became enraged over being "shut off" and said that he was going to "kick—" out of his brother for informing his parents about the incident. By this point, James had become intoxicated. James immediately left the bar, returned home, and became involved in a physical argument with John. James then left the house and briefly returned to the bar. In the meantime, defendant and his wife, remaining at the bar, had each consumed a couple of beers. Upon James's return to the bar, his parents left and returned home to find John crying and carrying an unloaded .22-caliber rifle. Mrs. Caron stated that defendant told John to put the gun away. About ten minutes later, James appeared at the door and forced his way into the kitchen over the protests of his mother. Both parents cautioned James not to hit his brother; instead, James is alleged to have struck both defendant and Mrs. Caron. When Mrs. Caron attempted to pull James off defendant by either his hair or his jacket, James pushed her to the floor, slapped her, and began to choke her. At this point, defendant went to his bedroom and got his gun. When he came back to the kitchen, James was still choking Mrs. Caron. It was then that defendant shot James twice in the back.[2]

---

1. A friend named John Crowley also went to the bar with the Caron brothers. There is some conflict in the testimony regarding whether John Caron accompanied his brother to the tavern or arrived by himself a little later in the evening.

2. At trial, defendant raised the issue of self-defense pursuant to G.L.1956 (1969 Reenactment) § 11–8–8, as amended by P.L.1977, ch. 17, § 1, but perhaps the most confusing element of the charge was that it addressed solely the justification of self-defense, while the evidence in the case pointed clearly to the doctrine of justification based upon defense of a third person. At common law, it was recognized that a person standing in the relation of husband and wife, parent and child, or master and servant, might repel with force an attack upon another if that person shared a relationship with the victim. 3 W. Blackstone, *Commentaries* * 3. This doctrine has been expanded and in recent cases we have indicated that where a victim had the right to use force to repel an assault and battery, one coming to the aid of the victim would also have the right to use force to repel such an assault. *See State v. Gelinas*, R.I., 417 A.2d 1381, 1386 (1980) (defendant may use same force in defense of person being aided as he would use in self-defense); *cf. State v. Small*, R.I., 410 A.2d 1336, 1338 (1980) (defendant may not aid unjustified user of force to assault justified user of force). It was further recognized at common law that one might kill if reasonably necessary to the defense of a member of his household. *See* 1 Wharton's *Criminal Law and Procedure* § 218 at 480, § 220 at 484–85 (12th ed. Anderson 1957). As in the defense of self-defense, the plea of justification in defense of a third person, if raised by defendant must be negated by the state beyond a reasonable doubt, provided the defense is supported by sufficient evidence to raise a factual issue.

A friend of James, Joseph Hennessey, testified that the victim had a reputation for being a little "wild," especially after drinking. Hennessey stated further that James had a "short fuse," was tough to handle and that he was argumentative. Other testimony indicated that the victim did not attempt any physical violence at the bar but that on a previous occasion James had beaten up his father.

A police officer who arrived at the Caron home, however, testified that there was no evidence or signs of physical violence. The officer did concede that defendant and his wife were visibly shaken, upset, and stunned. Mrs. Caron signed a statement at the police station on the evening of the shooting. In this statement she recalled that defendant had shouted at James while pointing his finger at James's face. Mrs. Caron stated defendant went and got his gun after James began to hit her. She also remembered that after shooting James, defendant gave her the gun. Finally, during questioning at the police station, Mrs. Caron admitted that defendant had threatened to shoot James on a previous occasion.

At the close of the evidence, the trial justice instructed the jury regarding the law of the case. The defendant did not object to any of the trial justice's instructions. The jury subsequently returned a verdict of guilty of murder in the second degree and defendant appeals.

The issues presented are (1) whether, in light of our ruling in *In re John Doe*, R.I., 390 A.2d 920 (1978), the trial justice properly instructed the jury regarding the burden of proof when the issue of self-defense was raised by defendant and (2) whether the indictment should be dismissed because of the unconstitutionally composed grand jury that indicted defendant.

I

The defendant argues that the trial justice failed to instruct the jury explicitly concerning the issue of self-defense. The defendant contends that the jury charge did not indicate clearly that the prosecution must establish, beyond a reasonable doubt, that defendant did not act in self-defense.

The state in turn concedes that the prosecution has the burden to negate the issue of self-defense beyond a reasonable doubt once this defense is raised. The state, however, submits that the charge, viewed in its entirety, was sufficient to apprise the jury of the fact that the prosecution was required to prove beyond a reasonable doubt that defendant was not acting in self-defense.

The trial justice instructed the jury that taking the life of another in self-defense constituted excusable homicide. Notwithstanding this declaration, however, the trial justice instructed the jury as follows:

"This Defendant is charged with murder.

"Murder, very simply defined, is the unlawful killing of a human being with malice aforethought or premeditation. In order to convict a person of murder you must find that this person had a malicious intent, had formulated some sort of a plan, acted upon that plan and consummated it by the killing of James Caron. So, I'll give you that definition one more time. Murder, very simply defined, is the unlawful killing of a human being with malice aforethought or premeditation.

"There are two degrees of murder. There is murder in the first degree and murder in the second degree. The difference between murder in the first and second degree is the amount of time of the premeditation.

" * * *

"Even though it's not spelled out in this Indictment, this Defendant could be found guilty by you of manslaughter. It's a lesser included offense. The difference between murder and manslaughter is the lack of premeditation. * * * Manslaughter typically takes place in the heat of passion, a barroom brawl, something happens, a confrontation; one person kills another without actually having planned it. It happens with no malicious intent. It's an unintentional act. It was not planned. It was not premeditated,

and that's the difference between murder and manslaughter; the lack of premeditation or malice aforethought.

"Also, an issue in this particular case is self-defense. If you find that Joseph Caron pulled the trigger and shot his son twice on that evening on the 24th day of September, last year, you might also find that he did so justifiably; that he acted in self defense.

"The law tells us that if a person is in fear of immediate bodily harm, he has the right to exercise his right of self defense. He must exercise the force which he feels is reasonable under the circumstances to subdue his assailant. * * * and under certain circumstances you have the right to take the life of your assailant, depending upon the circumstances surrounding the situation.[3]

" * * * *

"Joseph Caron is presumed to be innocent. As he sits at Counsel table at this very moment, in your eyes and mine he is presumed to be innocent. The only time that veil of innocence is pierced, if it ever is, is when you're convinced that the State of Rhode Island has proven his guilt as to each and every element of this offense beyond a reasonable doubt. Then and only then does the presumption of innocence vanish.

"The burden is upon the State of Rhode Island to prove his guilt beyond a reasonable doubt.

"It's encumbent upon the State of Rhode Island to prove his guilt beyond a reasonable doubt.

" 'The permissible degree of force used in self-defense is that which is necessary, under all the circumstances to prevent an impending injury.' "[4]

Before we rule on the adequacy of this charge, however, we must resolve a prelimi-

nary issue. This issue concerns defendant's failure to object to the trial justice's instructions, including the instructions relating to self-defense.

At the time of defendant Caron's trial, under Rhode Island law, an accused seeking to establish justifiable homicide by a plea of self-defense had the burden of proving such defense by a preponderance of the evidence. *See In re John Doe*, R.I., 390 A.2d 920, 924 (1978). In 1970, however, the United States Supreme Court had held in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that all elements of a crime must be proven beyond a reasonable doubt in a criminal prosecution. The Court stated that due process mandated compliance with this rule in all criminal prosecutions. Over the last decade this constitutional precept has become a basic requirement of our law.

Five years after *Winship* in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the Court, interpreting a Maine statute, ruled that the prosecution in a homicide case must "prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation" if defendant properly raises the issue. A month after Joseph Caron was convicted of murder, we held that when a defendant produces some evidence of self-defense, the burden falls on the state to disprove this defense beyond a reasonable doubt. *In re John Doe*, R.I., 390 A.2d 920, 926 (1978). And we have added to *Doe* by holding that due process requires that the jury must receive clear instructions that the prosecution must persuade them beyond a reasonable doubt that the killing was not in self-defense. *State v. Baker*, R.I., 417 A.2d 906, 910 (1980). · Because the rule in effect at the time of the trial did not comport with these due-process guarantees, we cannot say that failure to register an objection to

---

**3.** *See* P.L.1976, ch. 216, § 1, as amended by P.L.1977, ch. 17 § 1 (codified as G.L.1956 (1969 Reenactment) § 11–8–8) (presumption that owner of place wherein offense occurred, committed act in self-defense).

**4.** Under the circumstances, we decline to rule on whether the presumption of self-defense

should have been applied in this case pursuant to G.L.1956 (1969 Reenactment) § 11–8–8 as amended by P.L.1977, Ch. 17, § 1. A defendant, however, may independently raise the issue of self-defense without reliance on a specific statute.

the charge was fatal. This court has held that "review of an alleged deprivation of a basic constitutional right 'should be available if the failure to comply with the procedural requirement is not a 'deliberate bypass,' if it does not constitute 'sandbagging by a defense lawyer and if the record discloses that the breach complained of will constitute something more than harmless error.'" *Infantolino v. State*, R.I., 414 A.2d 793, 795 (1980) (*quoting State v. McGehearty*, R.I., 394 A.2d 1348, 1352 (1978)). A reading of the record discloses that the failure to object did not result from a surreptitious action on the part of defendant's counsel. Furthermore, we have held that the issue of self-defense once raised negates one of the elements of murder. *In re John Doe*, R.I., 390 A.2d at 926. Consequently, because lack of self-defense is a necessary element of the criminal offense in this case, the question of whether the jury was properly charged on this issue assumes a constitutional significance that cannot be ignored. Therefore, we shall review defendant's appeal even though no objection was made at the trial level because the appeal involves a basic constitutional issue. *Infantolino v. State*, R.I., 414 A.2d at 796.

In order to decide whether the jury instruction met the due-process standard, we must consider carefully the words actually spoken to the jury. "[W]hether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom v. Montana*, 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39, 45 (1979). Moreover, we must review the jury instructions in the context of the entire charge to determine whether the legal principles controlling a crucial factual issue were outlined properly by the trial justice. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368, 373 (1973); *McInerney v. Berman*, 621 F.2d 20, 23–24 (1st Cir. 1980); *State v. Baker*, R.I., 417 A.2d 906, 910 (1980).

■ Looking at the charge as a whole, we believe that a reasonable juror could have been misled by the instructions, and

thus defendant's due-process rights could have been prejudiced. Even though the trial justice charged that the prosecution must prove all the elements of murder beyond a reasonable doubt, his restatement of the rule concerning the issue of self-defense was constitutionally defective. Our analysis of the charge leads us to conclude that a juror could very easily have thought defendant bore the burden of establishing the existence of the proposition of self-defense. *State v. Baker*, R.I., 417 A.2d 906, 910 (1980); *see Connolly v. Commonwealth*, —— Mass. ——, ——, 387 N.E.2d 519, 524 (1979) (language strongly implied defendant had burden of proof). Therefore, as a matter of due process, we hold that it is reversible error for a trial justice simply to discuss the issue of self-defense and to instruct that the jurors may label the homicide justifiable if they find defendant acted in self-defense. *See State v. Baker*, R.I., 417 A.2d at 910.

Once defendant raises the issue of self-defense, we believe the words of the charge should convey to the jury that the burden falls on the prosecution to prove lack of self-defense beyond a reasonable doubt. *Id.*, 417 A.2d at 910. In the instant case, the trial justice's failure to instruct properly on the issue of self-defense deprived defendant of a basic constitutional right. *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459–60, 61 L.Ed.2d 39, 51 (1979). Such failure constitutes reversible error.

II

■ The second issue raised by the defendant is whether the instant case, consistent with our opinion in *State v. O'Coin*, R.I., 417 A.2d 310 (1980), should be remanded for a hearing on the constitutionality of the composition of the grand jury that indicted the defendant. In *O'Coin*, however, we held that in order for a defendant to challenge the constitutionality of a grand or petit jury, he must file a motion prior to trial pursuant to Super.R.Crim.P. 12(b)(2), (3). *Id.*, 417 A.2d at 313. No one disputes that the defendant neglected to file this motion prior to his trial. Under these cir-

cumstances failure to follow this procedure is considered a waiver by a defendant.

The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court.