MARGARET O'BRIEN *vs.* M & P THEATRES CORPORATION.
WILLIAM O'BRIEN *vs.* SAME.

JANUARY 8, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.   These are two actions of trespass on the case brought by a wife and her husband, respectively, for the recovery of damages resulting to them by reason of personal injuries sustained by her in a fall while descending the stairs in a certain theatre in the city of Pawtucket on March 15, 1942.   Since recovery in the husband's case depends on the defendant's liability for the wife's injuries, we shall first direct our attention to her case exclusively and, in discussing that, the word "plaintiff" will refer only to her.

In the amended declaration of two counts, upon which her case was tried in the superior court, she alleged in the first count that the defendant owned, controlled and operated the theatre as a place of entertainment and invited the public to attend it, for consideration to be paid, as such a place and as thus operated; that as a part of such operation the defendant maintained stairways for the use of patrons of the theatre; that it therefore was its duty to keep and maintain the covering on said stairs in a reasonably safe condition so that she and others who were lawfully upon the premises in the exercise of due care would not be exposed to injury from falling because of such covering being in a defective and dangerous condition.

She further alleged that upon the invitation of the defendant and for an admission price paid by her she became a patron of the defendant and as such was, in the exercise of due care, walking "over, along and upon" such stairway when, because of the negligence of the defendant in maintaining such stair covering, she caught her foot in a worn, broken or torn place in such stair covering and was thrown with great force and violence down the stairs and suffered serious bodily injuries, described by her, and pain and suffering and other damages described by her.

The second count was substantially the same as the first, the only difference being that, in describing how she fell, she alleged that she "stepped on" this place in the floor covering, "the frayed portions of which caused her to slip and she was thrown . . . ."

The defendant simply pleaded not guilty to each count of the declaration and the case was tried in the superior court before a judge and jury, the result being that at the conclusion of the evidence for the plaintiff a motion by the defendant for a nonsuit in each case was granted by the trial justice on the grounds that the case was brought against the wrong company; that the defendant was not operating the theatre and was not "responsible for any other reason for the accident in question". Each case is now before us on the plaintiff's exception to the granting of that motion and on one other exception, to the ruling of the trial justice in sustaining the defendant's objection to the introduction of certain testimony offered by the plaintiff.

At the trial it was shown by uncontradicted and unimpeached evidence that, when the plaintiff, who weighed 276 pounds, was injured she, in the course of leaving the theatre after attending the performance, was walking down a stairway of fourteen stairs, from the mezzanine to the second floor corridor, with her two young children following her. To her right, as she came down, was a handrail, which she used. At the third stair from the top her right foot caught and she felt it rolling forward from beneath her. She then

lost her balance, rolled down to the bottom of the stairway and sustained the injuries for which she seeks recovery in the instant case. She then got upon her feet and walked up four or five stairs, to a place where she could see the carpet on the third stair. She then noticed, in that carpet, a hole with frayed edges and with shiny metal beneath it. This she had not noticed before, though she had used the same stairway earlier in the afternoon in order to reach the mezzanine.

The evidence further showed that at the time of this accident the defendant had no title to the theatre property, but that another corporation, "New England Theatres, Inc.", held title to the real estate as lessee from the owners thereof, who are not involved in this case; that it held the license for the operation of the theatre; and that the manager thereof was its employee. But the plaintiff contended at the trial and still contends that, by reason of the contractual relations between the two corporations and certain representations made and invitations extended by the defendant to the public in accordance with such relations and relied upon by her, the defendant owed to her, as a member of the public and patron of the theatre, a duty to provide reasonably safe stairways for her use in entering and leaving the theatre.

The plaintiff introduced in evidence two written agreements between New England Theatres, Inc., therein described as "the Exhibitor", and the defendant. The first was dated March 18, 1937, and provided that the former corporation employed the latter for a certain period "to have supervision of the operation and management" of certain theatres in New England, including the Strand Theatre in Pawtucket, Rhode Island, being the theatre involved in this case. It provided in paragraph 3 that among the services to be rendered by the defendant were: "(a) To outline the general policies for said theatres, real estate properties and other businesses; (b) To purchase, contract for and book all motion pictures and other productions, attractions and entertainment to be presented at said theatres, and arrange all

programs; (c) To engage, employ, appoint and discharge personnel, and supervise and direct the same and determine the compensation thereof; ... (e) To collect all receipts and deposit the same in the name of the Exhibitor in such depositary or depositaries as the Exhibitor shall designate, and to prepare for signature by the proper officers of the Exhibitor checks for disbursements to be made by the Exhibitor; (f) To make repairs, alterations and improvements ...." Paragraph 4 provided: "M & P shall generally have full power and authority to do and perform all things incident to the general purposes of the agency hereinbefore described." Paragraph 6 provided for the payment to be made by the Exhibitor to the defendant for the services of the latter.

The second of these agreements was dated October 14, 1938 and was a modification in certain respects of the first of them, including the extension of the expiration date from July 1, 1939 to July 1, 1944. Except for this extension of time, it did not affect any of the provisions above stated as contained in the former agreement.

The plaintiff also relied on the facts, shown by uncontradicted evidence, that the newspaper advertising for this theatre featured "M & P Theatres"; that on the marquee in front of the building in which this theatre was located, and also over the ticket booth, was the name "M & P Theatres"; that the Pawtucket office of the defendant's manager was in the front of a building directly across the street from the front of the theatre building; and that he could see from the window of his office the above-mentioned signs in front of the theatre.

The plaintiff contends that, by reason of the contractual relations between the two corporations and other facts supported by evidence, the jury could reasonably have found that the defendant owed to the persons attending this theatre the duty to keep in a safe condition, for use by them, the parts of the building which were used for theatrical purposes, including the stairways leading from one part of the

theatre to another. She also contends that from the evidence the jury could reasonably have found that this duty was not performed by the defendant and that her injuries resulted from its nonperformance.

Upon a careful review of the evidence we are of the opinion that, because of the peculiar relationship between the two corporations, as shown by the contracts, and other pertinent circumstances, the defendant here was a proper party to this action. We therefore find that the trial justice was in error in granting the defendant's motion for a nonsuit on the ground that the action was brought against the wrong defendant.

But, notwithstanding such error, we are also of the opinion that the *conclusion* of the trial justice that the defendant's motion for a nonsuit should be granted was correct. This conclusion should, however, have been based on the ground that there was no evidence that the defendant had failed to perform its duty to the plaintiff and not on the ground that the defendant was an improper party.

, The plaintiff has cited and relied upon a number of cases in which it was held that one who invites the public to avail themselves of the use, for amusement or sport, of property owned or controlled by the invitor or in which the invitor has a financial interest is under a duty to use reasonable care to see that such property is kept in a reasonably safe condition for use by such invitees. These cases include *Frear* v. *Manchester Traction, Light & Power Co.,* 83 N. H. 64; *Engstrom* v. *Huntley,* 345 Pa. 10; *Lambert* v. *Jones,* 339 Mo. 677; *Schnatterer* v. *Bamberger & Co.,* 81 N. J. L. 558; *Weingard* v. *Putnam Theatrical Corp.,* 225 App. Div. (N. Y.) 808. We agree with the rule of law as therein stated.

In the *Weingard* case the appellate division of the supreme court of New York, in reversing a judgment of the lower court, said: "The trial court improperly charged the jury that defendant was liable if the carpet was torn and the plaintiff caught her foot in it and fell for that reason. Liability could not be imposed upon defendant unless it was also

shown that this condition of the carpet was known to defendant, or had existed for such a length of time that defendant should have known of it, or was of such a nature that it must have existed for such a length of time as to give it notice."

In the instant case there was no evidence to show just what was the condition, immediately before the accident to the plaintiff, of the stairstep where she tripped and lost her balance. And we do not find any evidence from which the jury could reasonably have found that the stairstep where the plaintiff lost her balance and fell was then in a dangerous condition; that her fall was caused by this condition; and that this condition was of such a character and had existed for such a length of time that, if the defendant had used reasonable care to see that the stairway was kept in a reasonably safe condition, it would have discovered its actual condition and made the stairstep in question reasonably safe.

We are therefore of the opinion that the plaintiff's exception to the granting by the trial justice of the defendant's motion for a nonsuit should be overruled, unless we find that plaintiff's only other exception, which refers to the exclusion of certain testimony, should be sustained on the ground that the excluded testimony was not only admissible but also supplied evidence of notice to the defendant of the alleged defective condition.

At the trial the plaintiff testified that when she fell ushers came to assist her "instantly"; and she was then asked by her attorney what, if anything, any of the ushers said when they were picking her up. This question was objected to and the giving of any answer was deferred. A little later, counsel for the plaintiff, in the absence of the jury, submitted, for the record, that, if the plaintiff were allowed to do so, she would testify that one of these ushers then said: "I knew someone would get hurt; the stairs should have been fixed." The defendant's attorney objected to the admission of such testimony and this objection was sustained

by the trial justice. The plaintiff's attorney then had an exception to this ruling noted and now relies on that exception.

Before us he relies upon the opinion of this court in *Powell* v. *Gallivan*, 44 R. I. 453. That case is clearly distinguishable in its facts from the instant case. In the former case the evidence in question was the natural and spontaneous statement of a small child to its mother immediately after the child had been bitten by a dog, which statement identified a dog that was then running away as the dog that had injured her. Here the statement was the utterance of a person who came to plaintiff's assistance after the accident, when she was some distance away from the place where it actually happened.

The offered testimony of what the usher said in the hearing of the plaintiff in this case was, in substance, the expression of an *opinion* by him rather than a spontaneous statement of fact explanatory of the accident. And it does not meet the test for its admission, as a part of the *res gestae*, for this reason and because it is altogether too vague and indefinite to connect it, directly or by reasonable inference, with the particular defect relied upon by the plaintiff as the cause of her fall, or throw any light on the question of how long it had existed. Therefore this exception is overruled.

All the exceptions taken by the plaintiff husband at the trial of these cases raised the same questions of law as were raised by the exceptions of the plaintiff wife. We therefore are of the opinion that all his exceptions should be overruled.

The plaintiff's exceptions in each case are overruled, and each case is remitted to the superior court with direction to enter judgment for the defendant on the nonsuit.

*Crowe & Hetherington, Thomas Hetherington,* for plaintiffs.

*Henshaw, Lindemuth & Siegl, James O. Watts,* for defendant.