**266 A.2d 41.**

MANUEL MARTIN *vs.* ARTHUR B. ESTRELLA.

JUNE 12, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a civil action for assault and battery wherein a Superior Court jury returned a verdict for the plaintiff in the amount of $2,000. Thereafter, the trial justice granted the defendant's motion for a new trial unless the plaintiff remitted that portion of the verdict in excess of $1,500. Although the remittitur was filed, the defendant prosecuted this appeal. The plaintiff has filed a motion to dismiss the defendant's appeal. Before proceeding to a consideration of the defendant's appeal, it is

necessary that we first consider the plaintiff's contention that the appeal should be dismissed because of the defendant's failure to comply with certain provisions of the Super. R. Civ. P. relating to appeals.

The plaintiff concedes that defendant, subsequent to the entry of judgment in the Superior Court, duly filed his notice of appeal in conformity with the provisions of Rule 73, but he argues that defendant forfeited his right of appeal by his failure to deposit the cost of the transcript as required by Rule 78 and his neglect to obtain any extension of time for the transmittal of the record to this court as provided by Rule 75(e).

The plaintiff's argument would have merit if defendant's appeal was taken at a time when appellate review of a Superior Court civil action was by way of a prosecution of a bill of exceptions pursuant to provisions of G. L. 1956, §9-24-17. In past years, we have stated on innumerable occasions that compliance with the conditions set forth in the statute relative to the proper filing of transcripts and the payment of stenographic fees were conditions precedent to review in this court. The statute, we said, was jurisdictional and, absent compliance therewith, this court was without jurisdiction to entertain an appeal. The defendant's appeal, however, was initiated after the effective date of the Super. R. Civ. P. — January 10, 1966. The General Assembly has provided that effective January 10, 1966, there would be but one form of appellate review of a final judgment, decree, or order entered in any civil action—be it at law or in equity—in the Superior Court, and that would be by an appeal. This statute also authorized the court to establish the time limit for the taking of any such appeal. In addition, the legislature amended the statute pertaining to bills of exceptions by stating that bills of exceptions were to provide a vehicle of appeal solely for crimi-

nal cases. See §§9-24-1 and 9-24-17, as amended by P. L. 1965, chap. 55, §41.

Rule 73(a) provides that an appeal must be taken by filing a notice of appeal with the clerk of the Superior Court within 20 days from the entry of judgment. The rule then goes on to state that the failure of an appellant to take any further steps to secure review will not affect the validity of his appeal, but that such failure is ground for dismissal by the Superior Court unless circumstances excuse the failure and justice demands that the appeal be heard. It is obvious that with the advent of the new rules and the amendment of §9-24-17 a litigant will not be deprived, ipso facto, of his appellate remedy because of his failure to comply with some of the procedures required by the rules once the claim of appeal has been timely filed. Rule 75(e) requires that the record on appeal, including the transcript, be forwarded to the Supreme Court within 60 days after the filing of the notice of the appeal unless the time is extended by an order of the Superior Court under Rule 75(g). Any of the time periods set forth in Rule 75 may be further extended by virtue of the terms of Rule 6(b) even if a previous extension of time has expired provided that the movant's failure to act was due to excusable neglect. Such an enlargement is discretionary with the Superior Court, and any grant thereof presupposes a valid excuse for the appellant's tardiness particularly if an enlargement of time is sought after the original time period or its extension has expired. 1 Kent, *R. I. Civ. Prac.*, §75.1, at 530. The Superior Court's action in granting or denying an extension because of a litigant's failure to take the necessary steps to implement his appeal is subject to review by this court by way of appeal.

A motion filed in this court to dismiss a Superior Court appeal is no longer the way to challenge an appellant's failure to abide by the postappeal procedures enumerated

in the rules. The record shows that in the Superior Court plaintiff filed two separate motions to dismiss this appeal because of defendant's failure to comply with various provisions of Rule 75 and Rule 78. The first motion was denied on April 24, 1969. The second motion was denied on September 27, 1969. On the same date, the Superior Court clerk certified the record to this court. This certification was premature in that plaintiff still had 20 days to file his claim of appeal from the denial of his motion to dismiss. However, plaintiff did on September 29, 1969, file a claim of appeal which was duly transmitted to this court. The appeal is in the papers of the case and shall be considered as having been properly filed notwithstanding the clerk's premature certification. The plaintiff, however, has failed[1] to furnish us with a transcript of the hearing held in the Superior Court on his motion to dismiss. There is nothing before us which shows that the trial court's denial of plaintiff's motion amounted to an abuse of discretion. Accordingly, plaintiff's appeal and his motion to dismiss are denied and dismissed.

The litigants are first cousins. They live across the street from each other. There is a past history of a family feud. The testimony relating to the alleged assault is in irreconcilable conflict. In the very early morning hours of May 5, 1962, plaintiff drove his car into a parking lot alongside his home. He testified that defendant suddenly appeared at the car window, grabbed him in a menacing manner and began to abuse and curse plaintiff. The plaintiff said that he left the car and his cousin struck him twice. Each blow caused him to fall. After the second fall, as plaintiff was lying on the ground, defendant kicked him several times. The plaintiff lost consciousness

---

[1]The plaintiff's failure is understandable. The premature certification led the plaintiff to believe that any effort on his part to obtain the transcript would be a futile gesture.

and was taken to the hospital where he was treated for facial bruises, a broken nose and chipped teeth. The plaintiff said that the assault was unwarranted and unprovoked. The plaintiff's wife, son, and a neighbor each witnessed some facet of the incident, and all three corroborated plaintiff's version of what had taken place.

The defendant, while conceding that he had struck plaintiff, denied kicking him. He contended that at all times he was acting solely to protect himself. Estrella told the court and jury that sometime earlier Martin had assaulted his father and that when he met Martin in the parking lot, plaintiff threatened to do the same thing to him as he had done to his father. On each occasion when defendant struck plaintiff, defendant testified that plaintiff had raised his hands as if he were going to strike defendant. If defendant is to be believed, he simply beat his cousin to the punch. The defendant presented a witness who substantiated his version of the altercation.

The law of self-defense proclaims that a person who reasonably believes that he is in imminent danger of harm at the hands of another may defend himself. He does not have to wait for the first blow to land. However, if such person strikes first, he may use only such force as is reasonably necessary for his own protection. The permissible degree of force used in self-defense depends on that which is necessary, under all the circumstances, to prevent an impending injury. *Hanauer* v. *Coscia*, 157 Conn. 49, 244 A.2d 611. A person is to be held accountable if he uses excessive force in resisting an assault. *State* v. *Sherman*, 16 R. I. 631, 18 A. 1040. If excessive force is used, a defendant may not excuse his conduct under the plea of self-defense. While in *Narell* v. *Sasso*, 76 R. I. 483, 72 A.2d 432, we stated that a trial justice should caution a jury to take into consideration the surrounding circumstances when determining whether or not a party who

claims he acted in self-defense has exhibited excessive force, we also declared that there was no necessity for the trial court to particularize each and every circumstance relating to an assault since a general reference thereto was sufficient.

In his charge to the jury, the trial justice remarked that if defendant, at the time he met plaintiff in the parking lot reasonably believed that plaintiff was about to do him bodily harm, defendant could strike the first blow, but that there was a limit to this right. At this point in his charge the trial justice alluded to the corridor outside the courtroom and said:

> "If a man pushes you out in the corridor, maybe he is wrong, it may be a battery; you just can't turn around and lay him flat. That isn't law and that isn't common sense. If a man threatens you in some way or other, you are entitled in self defense to use the amount of force that's reasonably necessary to protect yourself."

The trial justice then went on to point out to the jury that if they believed that plaintiff was the aggressor and defendant was in fear of bodily harm, defendant had the right to use reasonable force in defending himself.

The defendant complains that the court's example of the corridor push-and-punch episode was erroneous because it failed to take into consideration the admitted fact that some two years prior to the incident in the parking lot plaintiff had assaulted defendant's father. When a defendant has pleaded self-defense, he may introduce evidence of the plaintiff's reputation for violent behavior for the purpose of showing either that the defendant's fear that he was about to be injured was reasonable or that the plaintiff was the aggressor. If the defendant was aware of the plaintiff's reputation at the time he defended himself, this evidence is pertinent on both these issues. If he was unaware of his adversary's reputation, the evidence

is limited to the question of who was the aggressor. See McCormick, *Evidence* (1954 ed.) §159, at 339; *Rich* v. *Cooper,* 234 Ore. 300, 380 P.2d 613; *Brown* v. *Simpson,* 293 Ky. 755, 170 S.W.2d 345; *Davenport* v. *Silvey,* 265 Mo. 543, 178 S.W. 168. The defendant apparently ignores our oft-repeated rule that, when this court considers the correctness of a portion of a trial judge's charge to the jury, we look at the entire charge. At the conclusion of his instructions, the trial judge in the case at bar directed the jury's attention to plaintiff's criminal conviction for assaulting defendant's father. The jury was told that they could consider this conviction not only for the purpose of impeaching plaintiff's testimony but also as a basis for drawing such reasonable deductions as they deemed relevant on any of the issues before them in the pending suit. Two of the issues then before the jury were the questions of whether plaintiff was the aggressor and whether defendant's apprehension of being injured was reasonable. The charge, as it concerns defendant's liability, fairly presented the case to the jury and represented a proper guide for the rendition of a correct verdict. The court's instructions as to defendant's claim of self-defense were correct.

During cross-examination, defendant was asked if he had been convicted in the district court of an assault and battery upon plaintiff. He replied that he had. His counsel then objected to this line of questioning because the district court conviction had been appealed to the Superior Court and the complaint discontinued in that court. The trial court sustained the objection and instructed the jury to disregard defendant's answer because the district court conviction had been nullified by the appeal and subsequent discontinuance. The defendant contends that the prejudicial effect of this type of questioning could not be dissolved by the court's admonition that the jury disregard this testimony. We have examined the record in the light

of defendant's objection and we find that at no time did defendant move to pass the case because of the reference to his appearance in the district court. During the trial, the presiding justice admonished the jury that if he ruled that certain testimony was inadmissible, the jury could not consider such testimony. We have repeatedly held that a jury is presumed to obey the court's instructions. We believe that the absence of any motion to pass the case is an indication of defendant's belief that either the testimony was not prejudicial or that the jury would comply with the court's direction and dismiss this evidence from their minds. We can see no merit in this objection.

The next allegation of error relates to plaintiff's exhibiting to the jury some blood-stained bedclothing and a shirt. These items were displayed during the testimony of plaintiff's wife. She said that when her husband returned home he was bleeding and laid down on his bed while awaiting transportation to the hospital. The defendant contends that the exhibition of these two items was a calculated attempt by plaintiff to arouse the jury's prejudice. The record shows, however, that the Superior Court restricted plaintiff's interrogation of his spouse solely to an identification of these items as a bed sheet and her husband's shirt. The articles were not allowed to become an exhibit. In fact, the marks on these items remained unidentified until defendant in his cross-examination of the wife referred to the "blood" on plaintiff's possessions. Permission to allow a jury to view this type of an article lies within the sound discretion of the trial justice. His actions will not be interfered with except upon a showing to us of a clear abuse of such discretion. See *Auclair* v. *Legare*, 82 R. I. 18, 105 A.2d 669. The clothing was not marked as an exhibit for identification. It is not before us. We cannot say, therefore, that the trial justice was in error in his handling of this phase of the trial.

· The plaintiff's wife testified that she was standing on her porch looking at her husband approaching from the parking lot when she saw defendant hit Martin for the second time and then kick him. The wife then said that at this point she heard a bystander who was witnessing the incident scream, "He is going to kill that man." The defendant objected to this testimony and moved that it be stricken. His motion was denied, and this denial is the next ground of defendant's appeal.

It is conceded that the rule against hearsay testimony bars the admission of extra-judicial utterances which are offered as credible testimonial assertions. *Allen* v. *D'Ercole Constr. Co.*, 104 R. I. 362, 244 A.2d 864. A well-recognized exception to this prohibition embraces statements which are uttered under the stress of excitement produced by a startling event and made before the declarant has had an opportunity to reflect or contrive. McCormick, *supra*, §272, at 578; 6 Wigmore, *Evidence* (3d ed.) §1746, at 133-34. It is often referred to as the spontaneous utterance rule. See *State* v. *Nordstrom*, 104 R. I. 471, 244 A.2d 837.

The reason for this exception as explained by Wigmore is based:

"* * * on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of

the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts." §1747, at 135.

Although it is generally recognized with regard to this exception that the declarant is usually a participant in the exciting event, this fact is not essential, and declarations of a bystander or a witness may qualify as long as the declarations relate to the immediate facts of the startling occurrence. *Kane* v. *Burrillville Racing Ass'n*, 73 R. I. 264, 54 A.2d 401; McCormick, *supra*, §272, at 580; Wigmore, *supra*, §1751, at 155. Furthermore, since the extrajudicial assertion is regarded as being more reliable than what is likely to be obtained from the same person upon the stand, it is universally accepted that the death, absence, or other unavailability of the declarant need never be shown. McCormick, *supra*, §272, at 579; Wigmore, *supra*, §1748, at 138-139.

The bystander's statement was an instinctive description of the violence that was taking place before her very eyes. This testimony was competent evidence for the jury's consideration as a spontaneous statement of fact explanatory of the incident in the parking lot and was properly admissible. *State* v. *Nordstrom*, 104 R. I. 480, 244 A.2d 842; *State* v. *Bradshaw*, 101 R. I. 233, 221 A.2d 815; *O'Brien* v. *M & P Theatres Corp.*, 71 R. I. 339, 346, 45 A.2d 171, 175.

The plaintiff was treated for his injuries by two physicians and a dentist. One of the physicians was the admitting doctor on duty at the hospital when plaintiff arrived there. The other physician was a plastic surgeon who took over and supervised the care given plaintiff once the extent of his injuries was ascertained. The dentist, of course, looked after plaintiff's damaged teeth. Only the surgeon testified at trial. He gave a full explanation of plaintiff's injuries and the treatment he accorded them. This physician also informed the jury of his difficulty in obtaining

from plaintiff any history relating to the cause of his injuries. The witness pointed out that this difficulty stemmed from plaintiff's inability to speak English. This fact was quite apparent to the court and jury because the testimony of plaintiff and his wife was given through an interpreter.

In his charge, the trial court referred to the absence of the admitting physician and dentist. He informed the jury that they were free to draw the inference that the doctors' absence was attributable to the fact that they would testify adversely to plaintiff's interest, but that such unfavorable inferences were to be limited to the question of damages. The defendant contends that the trial justice's limitation was erroneous because the witnesses' absence might also be related to the question of liability. This absence, defendant claims, gives rise to an inference that the damages sustained by plaintiff were actually less extensive than he claimed and from this inference the jury could arrive at several inferences, namely, that defendant had used less force than described by plaintiff and his witnesses. Finally, a finding of less force would lead to the final and dispositive inference, to wit, that defendant used reasonable force in his encounter with plaintiff.

If the missing witnesses had appeared at the trial, their testimony would have been limited to a description of plaintiff's injuries and the treatment thereof. Had plaintiff sought to adduce from either the doctor or the dentist any statements he might have given them as to the cause of his injuries or the circumstances relating thereto, such testimony would have been subject to objection by defendant, and in all likelihood the objection would have been sustained. See *State* v. *Contreras*, 105 R. I. 523, 253 A.2d 612; *Mott* v. *Clarke*, 88 R. I. 257, 146 A.2d 924.

The extent of plaintiff's injuries was germane solely to the question of damages, and, as the trial judge remarked, only to that issue could any adverse inferences be drawn

by the jury because of the doctors' absence. To permit the pyramiding of inferences described by defendant would allow the jury to wander in the area of pure speculation and this would have resulted in confusing and misleading the triers of fact. We therefore find no merit in this phase of defendant's appeal.

Finally, the defendant complains that the award of $1,500 is excessive. In this case there was evidence which would warrant the awarding of compensatory and punitive damages. The jury's verdict was for $2,000. It was reduced to $1,500 by the trial justice when he considered the defendant's motion for a new trial. The record shows that the plaintiff's medical expenses and loss of earning capacity amounted to approximately $400. The remainder of the award can be allotted between pain and suffering and punitive damages. The jury believed the plaintiff's version of what went on when he arrived in the parking lot. He described an unprovoked and vicious assault. We can find nothing in this record which would justify any further reduction in the jury's verdict.

The defendant's appeal is denied and dismissed.

*John Quattrocchi, Jr.,* for plaintiff.

*Pearlman & Pearlman, Alan H. Pearlman,* for defendant.