DECISION
Before this Court is an appeal by Kenneth Harold, Sr. (Petitioner) from the September 1, 1995 Decision of the Department of Children, Youth, and Families (DCYF). The DCYF conducted a CANTS investigation and indicated Petitioner for using excessive, inappropriate discipline against Tonya Harold (Tonya), his minor daughter, causing cuts, welts, and/or bruises. Jurisdiction is pursuant to R.I.G.L. 1956 (1993 Reenactment) § 42-35-15.
Facts and Case Travel
On March 14, 1992, the Petitioner and Tonya, nearly age eighteen at the time[1], were arguing about Tonya's poor school performance and her use of the family car. Transcript at 10. During this argument "[Tonya became] out of control and began yelling. Id. at 8 and 10. Tonya then became angry and threw a phone and coffee cup at Petitioner, and "smash[ed] a peanut butter and jelly sandwich in his face." Id. at 10. Petitioner responded to these actions by slapping Tonya's face with an open hand "causing her eye to bruise a little" and a temporary cap on her front tooth, "which cracked easily", to chip. Id. at 12. (DCYF Decision at 2). Tonya then called 911 and reported this incident. Id. at 12. A Glocester Police Officer responded to the Harold family residence. (Glocester Police Incident Report, March 14, 1992; and Transcript at 12). The police officer transported Tonya to the police station with Petitioner following in his car. (Glocester Police Incident Report). The police officer spoke with Tonya and Petitioner and shortly thereafter resolved the disagreement. Id. Tonya returned home with Petitioner. Id. The Glocester Police neither charged Petitioner with abuse/assault for slapping Tonya, nor charged Tonya with wayward and delinquent behavior for assaulting Petitioner. Id.
On March 16, 1992, at 2:14 p.m., the DCYF received a phone call on the hotline. The reporter described his understanding of the events of March 14, and made an allegation of excessive, inappropriate discipline and cuts, welts, and bruises with respect to Tonya. (DCYF Decision at 1). The DCYF initiated a CANTS investigation following this report. In the course of the investigation Carol Darajki, the child protective investigator (CPI), spoke to the reporter and noted from the interview that "[Tonya] was observed to have a yellowish color bruise on [right] eye and a chipped tooth." (CPI's Investigation Interview Notes).
Additionally, the CPI interviewed, either personally or by telephone, the members of the Harold family, the Glocester Police, and the school department. Id. The CPI's investigation notes indicate that Elaine Harold, Tonya's mother, stated
 "[the] child became angry — threw everything off the counter — threw the phone at [Petitioner] . . . [who] went to backhand [Tonya] on shoulder area, he didn't mean to hit her in the face. [Tonya] had a red eye the next day — [her] tooth was chipped. [The] tooth had work done previous to this [and] was weak."
Furthermore, the CPI's notes indicate that Tonya admitted "throwing items at father" and "parents have not hit her before." Furthermore, the CPI noted that Petitioner stated Tonya was out of control as he "went to hit [Tonya] on shoulder, missed [and] accidently hit her face." Finally, the CPI interviewed Lawrence Cole, teacher at Ponagansett High School, and noted he "has had student in class . . . [and] did not observe [Tonya] with bruised eye . . ." (CPI's Child Abuse/Neglect Investigation InterviewNotes). The above "allegation was indicated on March 31, 1992, based upon the statements of Tonya and her parents, as well as, based upon the CPI's own observations of [Tonya's] injuries." (DCYF Decision at 2). On March 28, 1992, the CPI mailed a letter and investigation summary to the Chief of the Glocester Police Department pursuant to R.I.G.L. § 40-11-7 as well as Departmental Policy dated October 28, 1985.
A hearing commenced at DCYF on August 31, 1995, at the request of Petitioner. The hearing officer heard testimony from the CPI, Tonya, and Petitioner. The three witnesses were, for the most part, in agreement about the events of March 14, 1992 and the factual conclusions of the CPI. The hearing officer concluded "that there is sufficient, credible evidence to support the findings of . . . excessive/inappropriate discipline and cuts/welts/bruises." Id. at 3.
Standard of Review
The review of a decision of the Board by this Court is controlled by R.I.G.L. § 42-35-15(g), which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency,
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458.
The Agency Decision
The DCYF first argues that "the hearing officer properly concluded that there was "credible evidence" to sustain the [CPI's] finding of excessive and/or inappropriate discipline and cuts, welts, [and] bruises against [Petitioner]." (DCYFMemorandum at 6). The hearing officer heard testimony from the CPI, Tonya, and Petitioner. In arriving at the decision, the hearing officer relies in part on DCYF CANTS Policy No. 420, which states in part:
 II. PROCEDURE
 Standard of Proof to Indicate a Report is "credible evidence" which is defined as that collection of facts which when viewed in light of surrounding circumstances would cause a reasonable person to believe that abuse and/or neglect had occurred. (DCYF Cants Policy No. 420).
The DCYF argues that credible evidence exists in the record to support the finding of the CPI and the hearing officer. The DCYF states: "The statements made at the time of the incident are fairly consistent from the time of the incident, until the date of the administrative hearing, approximately three years later. At no time has anyone denied that [Petitioner] hit [Tonya] with an open hand in the face, . . ." Id. at 7.
Additionally, the DCYF argues that the CPI's findings of excessive, inappropriate discipline were made pursuant to R.I.G.L. § 40-11-2, which states in part:
 40-11-2. Definitions. — When used in this chapter and unless the specific context indicates otherwise:
 (1) "Abused and/or neglected child" means a child whose physical or mental health or welfare is harmed or threatened with harm when his or her parent . . .
 (a) Inflicts or allows to be inflicted upon the child physical or mental injury, including excessive corporal punishment; or
 (b) Creates or allows to be created a substantial risk of physical or mental injury to the child including excessive corporal punishment; (emphasis added).
Petitioner argues that the circumstances surrounding the incident justify the hitting of his daughter with a single, open-handed, slap and that this action was not excessive corporal punishment given the circumstances. Additionally, he argues that Tonya was the aggressor and committed an assault upon him. In response to having a phone and coffee cup thrown at him and having a sandwich smashed into his face, Petitioner slapped Tonya in self defense to "prevent the attacks upon his person from continuing." (Petitioner's Memorandum at 4). Petitioner contends "[t]his is not a case where a small child strikes the father, [but a case] where a child, who for all practical purposes is an adult, [is the aggressor against Petitioner]." Id. To support the self-defense argument, Petitioner cites Martin v. Estrella,266 A.2d 41, 46 (1970), which states in part:
 The law of self-defense proclaims that a person who reasonably believes that he is in imminent danger of harm at the hands of another may defend himself . . . The permissible degree of force . . . depends on that which is necessary, under all the circumstances, to prevent an impending injury.
Furthermore, Petitioner argues that the record indicates that Tonya was the aggressor and his action of slapping her once with an open hand was necessary to stop the assault.
However, the DCYF argues that even if charges were brought against Tonya for being wayward and delinquent for the assault upon her father, the Petitioner would still have been identified as a perpetrator of excessive, inappropriate discipline by the CPI for slapping his daughter causing some injury. (DCYFMemorandum at 9).
The DCYF does not cite any case supporting its interpretation of excessive, inappropriate discipline or excessive corporal punishment as applied to these circumstances. Our Supreme Court in State v. Thorpe, 429 A.2d 785, 788 (R.I. 1981), stated:
 "Although some believe that the doctrine `to spare the rod is to spoil the child' is outmoded, courts still recognize that some degree of corporal punishment is permissible. Accordingly, it is conceded that a parent has a right to use reasonable and timely punishment as may be necessary to correct faults in his/her growing children . . . Within the bounds of moderation and for the purpose of the best interests of the child, the parent is entitled to be the judge of what is required and the means adopted . . . As a general rule, . . . a parent . . . may inflict reasonable corporal punishment . . .
 However, it is clear that although the parent may use the rod, such an activity must be done with moderation. If a parent inflicts excessive or unreasonable corporal punishment upon his/her child, the parent is subject to criminal liability . . . The test of unreasonableness is met at the point at which a parent ceases to act in good faith and with parental affection and acts immoderately, cruelly, or mercilessly with a malicious desire to inflict pain, rather than make a genuine effort to correct the child by proper means . . . There is no inflexible rule that defines, what under all the circumstances, is unreasonable or excessive force. The accepted degree of corporal punishment must vary in relation to the sensitivity and character of the child, the child's age, sex, physical condition, as well as in relation to the particular offense for which punishment is to be meted out . . .
 `Excessive' is sufficient to convey the meaning that a parent may inflict corporal punishment to discipline and correct the child but may not do so to vent his/her anger or frustration on the child." (citations omitted) (emphasis added).
After reviewing the whole record this Court finds that the record is devoid of substantial, competent evidence to support the DCYF finding of excessive, inappropriate discipline. Tonya's testimony to throwing a phone and coffee cup at Petitioner and smashing a sandwich in his face was uncontradicted at the hearing and consistent with the CPI's notes. Petitioner admits to slapping his daughter in response to these actions. However, this Court does not find competent evidence from the record to support the hearing officer's finding that Petitioner's action of slapping his daughter once to stop her aggression was excessive corporal punishment. The DCYF presents no argument as to why the Petitioner's actions were excessive except that he slapped his daughter once in the face "causing [Tonya's] eye to bruise a little . . ." and chipping the weak temporary cap on her front tooth. (DCYF Decision at 2).
After a thorough review of the entire record in this matter, this Court finds that substantial rights of the Petitioner have been prejudiced because the DCYF Decision was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. The record does not contain competent evidence to support the conclusion of excessive, inappropriate discipline. Accordingly, the September 1, 1995 Decision of the Department of Children, Youth and Families is REVERSED.
[1] The Glocester Police Report and DCYF Child Abuse Neglect Form indicate that Tonya's date of birth is June 5, 1974.