STATE

v.

Lance DELLAY.

No. 95–519 C.A.

Supreme Court of Rhode Island.

Dec. 16, 1996.

Annie Goldberg, Asst. Attorney General, for Plaintiff.

Janice M. Weisfeld, Asst. Public Defender, Richard M. Casparian, Public Defender and Paula Rosin, Asst. Public Defender, for Defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendant, Lance Dellay, from a judgment of conviction of one count of second-degree murder and one count of felony larceny. The defendant was sentenced to a term of sixty years, fifty years to serve and ten years suspended with probation, on the murder count, and a concurrent term of ten years on the larceny count. On appeal, the defendant contended that the trial justice improperly excluded evidence of prior aggressive acts by the victim, Todd Ricci (Ricci or victim), thereby erroneously limiting admissible evidence relevant to the defendant's claim of self-defense. For the reasons stated below, we deny the defendant's appeal and affirm the judgment of the Superior Court. A summary of the facts pertaining to the appeal follows.

### Facts and Procedural History

In June 1992, defendant, Ricci, and Ricci's girlfriend, Stacey Lonsdale (Lonsdale), shared an apartment in Pawtucket, Rhode Island. The defendant also worked for Ricci, collecting drugs from suppliers and delivering them to Ricci's customers. In return for his services, Ricci promised defendant free rent and $200 per week salary.

On the morning of Friday, June 26, 1992, defendant, Ricci, and Lonsdale were in their apartment, along with Keith Allard (Allard), a friend who had spent the night. At trial, Lonsdale testified that she heard the sound of Ricci crying in another room but was not concerned because she assumed that Ricci was merely "joking around." Lonsdale then observed that the apartment door was open, defendant and Ricci were gone, and Allard was in the living room cleaning up blood. Shortly afterward, according to Lonsdale, defendant came up the stairs and into the apartment, "covered in blood" and carrying a baseball bat. Lonsdale testified that defendant announced that "he had to kill Todd, and Todd was dead down in the cellar." Lonsdale stated that she ran from the apartment and down the basement stairs where she found Ricci with "a big bump on his head" and "covered in blood" but conscious and "muttering" for help. Lonsdale testified that defendant came back down the stairs and struck Ricci in the head and ribs with the baseball bat, following which actions Lonsdale ran upstairs. According to Lonsdale, when defendant reentered the apartment, he had Ricci's wallet in his possession, from which he removed approximately $1,500, giving Lonsdale $100, and keeping the remainder.

At trial, defendant presented a different version of the events surrounding Ricci's death. According to defendant, Ricci had been regularly withholding the $200 a week that he had promised to pay defendant for collecting and delivering drugs. The defendant testified that, on the morning in question, when he asked Ricci for the money owed him, Ricci became upset and threatened to kill defendant. According to defendant, Ricci "came at" him with a baseball bat, but the bat somehow came out of Ricci's hand and was retrieved by defendant. The defendant testified that when Ricci approached him again, this time with a milk crate, he swung the bat at Ricci. The defendant stated that he dragged Ricci's body to the basement because he believed Ricci was dead. The defendant denied striking Ricci on the stairs.

Later that same afternoon, defendant, Lonsdale, and Allard drove to Lonsdale's parents' home in North Attleboro, Massachusetts, where Lonsdale remained while defendant and Allard disposed of Ricci's body. On Sunday, June 28, 1992, Lonsdale, accompanied by her stepfather, gave a statement to North Attleboro police about the events surrounding Ricci's death.

One Carrie Bestwick (Bestwick) testified that, at about 3:30 a.m. in late June 1992, she met defendant outside a doughnut shop in North Attleboro. According to Bestwick, defendant indicated that he had killed Ricci with a baseball bat, asserting that "[Ricci] pissed me off so much I just couldn't stop." Bestwick, accompanied by two friends, ultimately drove defendant and Allard to a hotel in Montreal.

On July 1, 1992, defendant was arrested in Montreal, whereupon he gave a statement to Montreal police in which he related that he had struck Ricci in self-defense. The defendant waived extradition and was returned to the United States.

On October 30, 1992, defendant was charged by indictment with the murder of Ricci in violation of G.L.1956 § 11–23–1, with felony larceny in violation of G.L.1956 §§ 11–41–1 and 11–41–5, and with failure to report a death in violation of G.L.1956 § 23–4–7(a) and (f). On October 12, 1993, the failure-to-report-a-death charge was dismissed, pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

A jury trial was held on the two remaining counts over several days in April 1994. On April 22, 1994, the jury found defendant guilty of murder in the second degree and felony larceny. On June 24, 1994, the trial justice denied defendant's motion for a new trial. Following his sentencing on September 30, 1994, defendant filed this appeal, pursuant to G.L.1956 § 9–24–32.

### Exclusion of Evidence of Victim's Prior Aggressive Acts

At trial, defendant asserted that he struck Ricci in self-defense. In support of this claim, defendant sought to introduce evidence of Ricci's reputation as a violent person and evidence of prior aggressive acts by

Ricci, in order to establish Ricci's propensity for violence and to show that Ricci had been the initial aggressor in this case. The state moved *in limine* to exclude evidence of specific acts unless it could be shown that defendant was aware of those acts at the time he struck the victim. The defendant argued that specific acts, even those unknown to defendant, are admissible under Rule 405(b) of the Rhode Island Rules of Evidence because the character of the victim is an essential element of the defense of self-defense.

The trial justice ruled that under Rule 405(a) Ricci's character as an aggressor could be proven by testimony on his reputation or by opinion and, further, that "relevant specific instances of the conduct" could be inquired into on cross-examination. The trial justice also ruled that instances of prior bad conduct would be admitted under Rule 405(b) if offered under Rule 404(b) "to prove that the defendant feared imminent bodily harm, and that the fear was reasonable based on that knowledge." The trial justice concluded, however, that because "[a] person cannot claim that his or her fear was a reasonable one if not based on matters within the knowledge of the person having the fear," evidence of specific instances of bad conduct *not* known to defendant at the time of confrontation would not be admissible under either Rule 404 or Rule 405.

At trial, several defense witnesses testified in respect to Ricci's reputation as an aggressive and volatile person. These witnesses were not, however, permitted to testify regarding the specific aggressive or violent acts by Ricci that formed the base for their opinions.

On appeal, defendant maintained that the trial justice erred in excluding evidence of the victim's prior specific aggressive acts of which defendant was unaware "to prove that the victim acted in conformity with his violent character" and thus was the aggressor in the instant confrontation.

### Rules 404(a)(2) and 405(b)

The defendant contended that "Rules 404(a)(2) and 405(b) of the Rhode Island Rules of Evidence together permit the introduction of other specific aggressive acts of

the victim, regardless of the defendant's awareness of those acts, in order to prove that the victim was the aggressor in the conflict." Rule 404(a)(2) states in pertinent part:

"Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except * * * (2) * * * [i]n cases in which the defendant has raised self-defense, evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor."

Rule 405 states:

"(a) *Reputation or Opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

"(b) *Specific Instances of Conduct.* In cases in which character or a trait [of] character of a person is an essential element of a charge, claim, or defense, or when evidence is offered under Rule 404(b), proof may also be made of specific instances of the person's conduct."

This Court had addressed the admissibility of evidence of the victim's prior aggressive acts in several cases prior to the adoption of the Rules of Evidence in 1987. In *Martin v. Estrella,* 107 R.I. 247, 254–55, 266 A.2d 41, 47 (1970), we permitted a defendant who pleaded self-defense to introduce

"evidence of the plaintiff's reputation for violent behavior for the purpose of showing either that the defendant's fear that he was about to be injured was reasonable or that the plaintiff was the aggressor. If the defendant was aware of the plaintiff's reputation at the time he defended himself, this evidence is pertinent on both these issues. *If he was unaware of his adversary's reputation, the evidence is limited*

*to the question of who was the aggressor."* (Emphasis added.)

Also, in *State v. Infantolino,* 116 R.I. 303, 313, 355 A.2d 722, 728 (1976), this Court held that

"[t]he rules of law expressed in *Martin,* however, are equally applicable to a criminal proceeding. When a defendant has pleaded self-defense, he may introduce evidence of his adversary's reputation for violent behavior in order to show either the reasonableness of the defendant's fear at being injured or the fact that the adversary was the aggressor. If the defendant was *aware* of this reputation when he defended himself, this evidence is pertinent on both issues. If he was *unaware,* the evidence is limited to determining who was the aggressor."

And in *State v. Baker,* 417 A.2d 906, 911 (R.I.1980), we "adhere[d] to our evidentiary rule that proof of bad character may be shown only by general reputation and not by specific acts of misconduct." One year later, however, in *State v. Tribble,* 428 A.2d 1079, 1085 (R.I.1981), we reconsidered our previous rule and held:

"[A] defendant who asserts the defense of self-defense is now entitled to adduce relevant evidence of specific acts of violence perpetrated by the victim against third parties, *provided however, that the defendant was aware of these acts at the time of his encounter with the victim.*

This rule, however, is not to be implemented without limitation. * * * *[S]uch evidence is only to be considered with regard to the reasonableness of the defendant's fear that the victim was about to inflict bodily harm upon him* and * * * the evidence is not to be considered for the purpose of establishing that he probably acted in conformity, on the occasion in question, with his prior acts of violence." (Emphases added.)

The defendant has now asked this Court to expand our ruling in *Tribble* to permit the introduction of evidence of other aggressive acts of a victim, regardless of whether a defendant was unaware of them, for the purpose of proving that the victim was the "first aggressor."

The defendant noted that a distinction exists between the use of character evidence for the purpose of determining the reasonableness of a defendant's fear, and the use of such evidence for determining the aggressor. The defendant reasoned that in a determination of the question of who was the aggressor, it is irrelevant whether a defendant was aware of the victim's aggressive or violent character. With this position we have clearly agreed. *See State v. Infantolino,* 116 R.I. at 313, 355 A.2d at 728; *Martin v. Estrella,* 107 R.I. at 254–55, 266 A.2d at 47.

But defendant then advanced the argument that Rules 404(a)(2) and 405(b) together allow a defendant to use a specific violent act as proof of a violent character because the victim's aggressive character is an essential element of the defense of self-defense rather than "a circumstantial use of character evidence." With this assertion, we disagree.

 It is well settled that Rhode Island does not require proof that the victim was the initial aggressor to sustain a defense of self-defense. "Under the law relating to self-defense, one may defend oneself whenever one reasonably believes that he or she is in imminent danger of bodily harm at the hands of another. Such a person, having the fear, need not wait for the other to strike the first blow." *State v. D'Amario,* 568 A.2d 1383, 1385 (R.I.1990). Thus, although "one may not invoke the doctrine of self-defense if he or she has instigated the combative confrontation," *State v. Martinez,* 652 A.2d 958, 961 (R.I.1995) (quoting *State v. Lamoureux,* 573 A.2d 1176, 1180 (R.I.1990)), it is not necessary to demonstrate that the victim struck the first blow in order to assert a defense of self-defense. We conclude, therefore, that because the character of the victim is not an essential element of the defense of self-defense, evidence of the victim's character is appropriately limited to reputation or opinion testimony. R.I.R.Evid. 404(a)(2) and 405.[1]

## Rule 404(b)

The defendant also contended that Rule 404(b) "supports [defendant's] efforts to in-

---

**1.** We note that the premise for character evi- dence is that personality may be defined in

troduce evidence of Todd Ricci's prior aggressive and violent acts." Rule 404(b) states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

In respect to the admissibility of specific-acts evidence, pursuant to Rule 404(b), our ruling in *Tribble* is controlling. Hence, such evidence is admissible only as proof of the reasonable-fear element of self-defense, *and* the defendant must have been aware of the victim's prior aggressive acts at the time of the confrontation with the victim. Evidence of other violent or aggressive acts by the victim may not be introduced to establish that the victim acted in conformity with those prior acts of violence on the occasion in question. *State v. Tribble*, 428 A.2d at 1085.

The Advisory Committee's Note to Rule 404 remarked that Rule 404(b) "expands upon the exceptions to the propensity rule in FRE 404(b) to include proof 'that the defendant feared imminent bodily harm and that the fear was reasonable.'" (Advisory Com-

mittee's Note at 1086). We decline to expand that rule further to encompass proof that a victim acted in conformity with his or her prior violent or aggressive acts. In fact, the Advisory Committee's Note to Rule 405 recognized that our ruling in *Tribble* controls the circumstances in which a defendant may introduce specific-acts evidence in a self-defense case in this jurisdiction. (Advisory Committee's Note at 1089). In its comprehensive discussion of our holding in *Tribble*, the Advisory Committee's Note does not suggest that our holding fails to comport with the Rules of Evidence.

It is well settled that this Court will not disturb a trial justice's ruling on an evidentiary issue unless that ruling "constitutes an abuse of the justice's discretion that prejudices the complaining party." *State v. Johnson*, 667 A.2d 523, 530 (R.I.1995) (citing *State v. Cardoza*, 649 A.2d 745, 749 (R.I.1994); *State v. Germano*, 559 A.2d 1031, 1036 (R.I. 1989)). It is our conclusion that, in the instant case, there was no abuse of that discretion by the trial justice in excluding evidence of specific misconduct by the victim. Consequently, we deny the defendant's appeal and affirm the judgment of the Superior Court, to which we return the papers in this case.

terms of traits that produce consistent forms of behavior. There is, however, a lack of consensus in psychological theory regarding the extent to which stable personality traits exist. Richard Schulz & Robert B. Ewen, *Adult Development and Aging: Myths and Emerging Realities*, (N.Y. MacMillan 2d ed. 1993). Some research has confirmed the notion that relatively enduring personality traits exist. *E.g.*, R.R. McCrae & P.T. Costa, Jr., *Emerging Lives, enduring dispositions, Personality in adulthood*, Boston: Little, Brown (1984). Other studies have concluded that human behavior is not consistent enough to be analyzed in terms of traits alone, and that the interaction between traits and specific situations must be considered. *E.g.*, W. Mischel, "The Interaction of Person and Situation," in D. Magnusson & N.S. Endler (eds.), *Personality at the crossroads: Current issues in interactional psychology*, Hillsdale, N.J.: Erlbaum (1977). In addition, there is evidence that whether a particular trait is observable or whether certain behavior occurs may be influenced by an individual's age or health or by prevailing social conditions. *See, e.g.*, H. Tho-

mae, "Personality and adjustment to aging," in J.E. Birren & R.B. Sloane (eds.), *Handbook of mental health and aging*, Englewood Cliffs, N.J.: Prentice–Hall (1980).

More recent neurogenetic studies have suggested that certain behavior may be predictable. For example, researchers have linked a "novelty seeking" gene to impulsive behaviors. C. Robert Cloninger, Rolf Adolfsson, & Nenad M. Svrakic, "Mapping Genes for Human Personality", *Nature Genetics*, Vol. 12, at 3–4 (January 1996). Another recent analysis has shown a significant association between the presence of an allele that encodes a transporter for the neurotransmitter serotonin with quantifiable anxiety-related personality traits. K.-P. Lesch et al., "Association of Anxiety–Related Traits with a Polymorphism in the Serotonin Transporter Gene Regulatory Region," *Science*, Vol. 274 at 1527–31 (29 November 1996). The scientific validity of such analyses of behavior by the identification of "personality genes" will present evidentiary challenges to the courts.