COMMONWEALTH vs. MICHELLE HOULE OLSON.

Hampden. October 17, 1986. — July 28, 1987.

Present: GREANEY, C.J., QUIRICO, & ARMSTRONG, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Assault with Intent to Kill. Self-Defense. Evidence,* State of mind, Cross-examination. *Practice, Criminal,* Instructions to jury.

At the trial of indictments for assault and battery by means of a dangerous weapon and for assault with intent to kill, the extent to which the judge allowed the defendant to testify as to issues concerning her mental state, with particular reference to her fear of physical harm from the victim and from her own husband, and concerning the victim's use of cocaine and his intoxication, left no room for a valid claim that the judge's evidentiary rulings had deprived the defendant of any constitutional right to present evidence on these issues. [542-543]

Where, throughout the trial of indictments for assault and battery by means of a dangerous weapon, a knife, and for assault with intent to kill, the defendant's case was based on a claim of self-defense, and no evidence was introduced which would have warranted the judge in instructing the jury that the Commonwealth had the burden of proving that the defendant's stabbings of the victim were not accidental, the judge's failure to give such an instruction on her own initiative presented no issue for an appellate court. [544-545]

INDICTMENTS found and returned in the Superior Court Department on November 16, 1984.

The cases were tried before *Elizabeth A. Porada,* J.

*Andrew Silverman,* Committee for Public Counsel Services, for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J. After a trial by jury, the defendant was convicted of three offenses, all allegedly committed on the same date and against the same victim. Two of the convictions were of assault and battery by means of a dangerous weapon, to wit:

a knife (G. L. c. 265, § 15A),[1] and one was of assault with intent to kill, being armed with a dangerous weapon, to wit, a knife (G. L. c. 265, § 18).[2]

On appeal the defendant contends that the trial judge violated her constitutional right to present a defense by her rulings (1) preventing the defendant from testifying as to her state of mind during the events out of which the indictments arose, and (2) limiting her cross-examination of the victim concerning his admitted use of cocaine on the night of the incident. In addition, the defendant contends that the absence of any jury instruction on the Commonwealth's burden of proving that her stabbings of the victim were not accidental created a substantial risk of a miscarriage of justice. We hold that there was no error, and affirm the judgments.

The jury could reasonably have found the facts that follow. Beginning on the evening of August 25, 1984, and continuing into the early hours of the next day, the victim, Walter "Westy" Kobylanski, and his girl friend had a birthday party for Westy at their apartment in Chicopee. Those attending the party included the defendant's husband, Gary Olson. The defendant was not invited. There had been domestic problems between the defendant and her husband before that date. After completing her work shift at 11:00 P.M., the defendant drove to the locale of the apartment where the party was being held, appeared at the door inquiring about her husband, and was told to leave because her presence was not wanted. She left and then returned to the apartment at about 4:00 A.M. on the 26th. The victim answered the door, and the defendant again asked

---

[1] The only explanation in the record for the two separate charges of assault and battery by means of a dangerous weapon, to wit: a knife, is the following statement in the final argument of the prosecutor: "that is because she [the defendant] got him [the victim] twice, she got in here [in the elbow] and she got him here [in the groin]." The defendant was sentenced on one of these two charges; the other was "placed on file with the consent of the Defendant."

[2] The indictment involved here charged the crime of assault with intent to murder. "[A]ssault with intent to kill is a lesser included crime within the crime of assault with intent to murder." *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985).

to speak with her husband. After a very unpleasant conversation at the door Olson rejoined the party and the defendant returned to her car.

Shortly thereafter, the victim heard what sounded "like rocks being thrown at the apartment," and he went outside to investigate. Seeing the defendant on the sidewalk, he told her to leave. What happened next was the subject of highly contradictory testimony, and the jury appears to have rejected the defendant's testimony and to have accepted the testimony of the victim and several witnesses, including the defendant's husband, who testified for the Commonwealth. Accordingly, we primarily recount the prosecution version of the facts.

An argument followed the "rock throwing," and the victim and the defendant became entangled on the ground while blows were exchanged. When the two separated, the victim headed toward the apartment, and the defendant toward her car. When the defendant got to her car she reached in and armed herself with two large knives that were there with other kitchen utensils and personal effects belonging to her brother who had been using the car that day to move. The defendant then turned toward the victim, continuing the verbal abuse. She then smashed the windshield of the victim's car with the knife handles.

While that was going on, Olson came out of the apartment and he and the victim tried to disarm the defendant. The victim struck the defendant, and she then "spun around and hit [the victim] on the arm" with one of the knives and cut him. At about that time the defendant's husband kicked one of the knives out of the defendant's hand. She dove to retrieve the knife, straightened up, "lunged" at the victim, and stabbed him in the groin, severing his left femoral artery. Olson then subdued the defendant, she broke free, ran to her car, and drove off.

In contrast, the defendant attempted to prove, by her testimony, that the victim had harassed, threatened, and beat her; and that, fearful of further injury, she armed herself with the knives for self-defense. As to the first time she cut the victim, she maintained that she was "totally scared" and had only attempted to block any further blows upon her, not realizing

that she had cut the victim's arm. She testified further that, after she recovered the knife which her husband had kicked from her hand, she was straightening up when she saw the victim "running at" her and she therefore "lunged forward with the knife in [her] hand" because the victim was "ready to hit [her] and [she] had to stop him."

The defendant contends that on several occasions during the course of the trial the judge made rulings which deprived her of her constitutional right to present evidence relevant to the issues involved. A defendant in a criminal case is, of course, entitled to present evidence concerning issues that might have "a significant impact on the result of the trial. . ." *Commonwealth* v. *Bohannon,* 376 Mass. 90, 94 (1978). When such evidence is excluded "the right to present a full defense has been denied." *Ibid.*

One of the issues involved at the trial was whether the alleged acts of assault and battery by the defendant were justified as committed in self-defense. In her testimony on direct examination the defendant stated a number of times that when the victim and her husband were fighting her, threatening her, or approaching her, she felt "afraid," "scared," and "vulnerable" because she had been struck and injured. She testified that she was "afraid of both of them," that the victim had "already beaten" her, that her husband had "beaten [her] before." Upon objection by the Commonwealth, the judge struck out the last statement that her husband had "beaten [her] before." The defendant made no objection to that ruling, and she made no offer of proof concerning the particulars of when, where and how her husband had previously beaten or battered her. During cross-examination of the defendant the prosecutor attempted to minimize the reasonable basis of the fear, if any, motivating her claim of self-defense by getting her to "admit that [she] knew that [the victim and Olson] were *just* trying to get the knives away . . ." (emphasis added). She responded: "Not just. I knew they were trying to get the knives away from me."

On redirect examination defense counsel attempted to elaborate on what the defendant had meant by this statement by

asking her, "What did you think would happen if [Olson and the victim] got the knives away from you when you were facing [the victim] out in the street? What did you think was going to happen?" The judge sustained the prosecutor's general objection to the question and, again, the defendant failed to object or to make an offer of proof.

The final point on which the defendant asserts she was precluded from presenting relevant evidence was the extent of the victim's use of cocaine prior to the stabbings. There was other evidence, however, concerning the victim's use of the substance. After the victim had been cut and stabbed by the defendant, he was taken to a hospital for treatment. The hospital record showed that on the previous evening the victim had partaken of cocaine; and in cross-examination the victim admitted that fact and the fact that at the time he was cut and stabbed by the defendant he was intoxicated. The hospital record, which was admitted in evidence, shows that "[t]he patient [victim] had been drinking fairly heavily and also had been using cocaine earlier in the evening . . . [and that i]n the emergency room the patient was . . . quite confused, combative and difficult."

As to most, if not all, of the instances in which the trial judge precluded the defendant from presenting evidence, it is questionable whether the defendant's trial counsel properly laid the groundwork for appeal from the judge's rulings. However, that may be immaterial for other reasons. The extent to which the defendant was permitted to testify about her mental state, particularly about her fear of physical harm from the victim and from her own husband, leaves no room for a valid claim that she was deprived of any right to present evidence on that issue. The same is true as to the related issues of the victim's use of cocaine and his intoxication. To the extent that the admission or exclusion of additional evidence on those issues was a matter of discretion of the trial judge, there was no abuse of that discretion. Insofar as the defendant asks for relief under the rule of the case of *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967), we hold that the alleged errors, if any, of the trial judge on these issues did not create a substantial risk of a miscarriage of justice.

The remaining issue to be considered is whether the defendant is entitled to reversal and a new trial because the trial judge did not instruct the jury that the Commonwealth had the burden of proving that the stabbings of the victim were not accidental. There is no question that the judge gave no such instruction. There were good reasons why she did not give such an instruction and why she was not required to do so. This case was tried throughout by the defense on the proposition that whatever the defendant did by way of assaulting and beating the victim by means of knives was legally justified as a matter of her self-defense, and that the burden was on the Commonwealth to prove beyond a reasonable doubt that the conduct was not justified as a matter of self-defense. The defendant requested an instruction on the subject of self-defense. The trial judge instructed the jury on that subject. The defendant raised no question about the accuracy or sufficiency of any of the instructions given by the trial judge. The defendant did not, at any stage of the trial, ever suggest or argue that the cutting and stabbing of the victim by the defendant resulted from any accident. A reading of the transcript shows that the word "accident" was used only once at the trial, and that was by the prosecutor in her final argument. There was no instruction on the subject of an accident because there was no evidence which would have warranted the giving of such an instruction. *Commonwealth* v. *Fluker,* 377 Mass. 123, 130-131 (1979). See also *Commonwealth* v. *Barton,* 367 Mass. 515, 517-518 (1975); *Commonwealth* v. *Costa,* 360 Mass. 177, 184 (1971) ("trial judge is not required . . . to charge on an hypothesis which is not supported by evidence"); *Commonwealth* v. *Lacasse,* 1 Mass. App. Ct. 590, 597 (1973).

A lawyer cannot try a case on one theory and then, having lost on that theory, argue before an appellate court about alleged issues which might have been, but were not, raised at the trial. That is true whether or not the trial lawyer and the appellate lawyer are the same person, and whether or not they are in any way associated. The appeal must be based on what took place at the trial, not on anything which is presented for the first time before an appellate court. *Commonwealth* v. *Johnson,*

399 Mass. 14, 15 (1987), and cases cited. There was no error in the instructions.

*Judgments affirmed.*