The defendants, Pamela Ferrie and Keita Freeman, appeal from their convictions following a Superior Court jury trial. Both defendants were convicted of witness intimidation, in violation of G. L. c. 268, § 13B. Freeman was also convicted of assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A(b ). We affirm the defendants' convictions.
Background. We briefly recite the facts that the jury could have found, reserving certain facts for later discussion. In July, 2014, the defendants approached the victim, Erica Messina, on the front porch of a three-story apartment building in the Dorchester section of Boston. Ferrie was a resident of the apartment building. Messina frequently stayed at the building with a friend who lived in the second floor apartment with John Lynch. Ferrie and Messina had a contentious relationship stemming from allegations that Messina went through Ferrie's valuables in the basement of the building. Ferrie was also upset because Messina frequently loitered on the front porch of the building. Freeman, Ferrie's boy friend, confronted Messina about her ongoing conduct. Messina told Freeman that she was stressed out and pregnant. When Messina attempted to leave the porch, Freeman punched her on the side of the face. Messina then swung a knife at Freeman. Freeman knocked the knife out of her hand with a chair and continued to beat her head and stomach with the chair.
After his arrest, on a jailhouse recorded telephone line, Freeman admitted that he "bugged out" on Messina because he was stressed out.[3] He instructed Ferrie-in so many words-that she needed to prevent Messina from testifying against him in court.[4] Over the course of her recorded conversations with Freeman, Ferrie repeatedly agreed to his requests, and at one point stated, "I've done everything you've asked me to do." The recorded telephone calls were entered in evidence.
Shortly after her recorded conversation with Freeman, Ferrie told Messina that she should not go to court and that if she did, she and her unborn child "would be done." According to Messina, that same day she informed her mother, the building's landlord, Stephen Lasoff, and Lynch that Ferrie threatened her. Shortly after, Messina reported the threat to Detective Thompson, who in turn contacted Lasoff and then filed a complaint in the District Court.
Ferrie's appeal. Ferrie contends that the judge erroneously admitted hearsay evidence that corroborated Messina's testimony and cut against Ferrie's alibi. Ferrie also maintains that the prosecutor misstated evidence in his closing argument.
a. Hearsay. Messina told Lynch about the conversation in which she claimed Ferrie threatened her. At trial, Messina did not initially recall the exact date that the threat occurred. During cross-examination, Messina assented to Ferrie's theory that the threat took place on July 28, 2014, a Monday. Ferrie had an alibi-testimony from her employer that she was at work on July 28. To rehabilitate Messina's testimony, the Commonwealth examined Lynch, who testified that he spoke with Messina about the threat on the day that it occurred, which was a Sunday.[5] Over objection, he testified to what Messina told him. Ferrie contends that Lynch's testimony regarding his conversation with Messina was impermissible hearsay.
Ordinarily, "a witness's prior consistent statement is inadmissible, even where a prior inconsistent statement of the witness has been admitted." Commonwealth v. Zukoski, 370 Mass. 23, 26 (1976). "[H]owever, a witness's prior consistent statement is admissible where a claim is made that the witness's in-court statement is of recent contrivance or is the product of particular inducements or bias." Id. at 26-27.
The defense questioned Messina's credibility, and impeached her with her history of drug use, admitted falsehoods, and varying versions of her story at different stages of the proceeding. While Ferrie's counsel stated in his opening statement that Messina's story was fabricated, there was no claim that the story was recently fabricated.[6] The defense theory was that Messina was unreliable, and had fabricated all of her testimony from the start. Contrast Commonwealth v. Saarela, 376 Mass. 720, 723 (1978). Accordingly, Lynch's testimony was not admissible as a prior consistent statement.
Lynch's testimony was, however, admissible for other reasons. "[I]f a statement is not offered to prove the facts asserted in it but is offered only to show that the statement 'was made,' it is not hearsay and is admissible." Commonwealth v. Siny Van Tran, 460 Mass. 535, 550 (2011). Lynch's testimony was admissible to show the jury that Messina spoke with Lynch on the day the threat occurred-a Sunday. See Commonwealth v. Sullivan, 410 Mass. 521, 526 (1991). Therefore, Lynch's testimony concerning the fact of the conversation and its general content was properly admitted for that relevant purpose.
Ferrie objected to Lynch's testimony, but did not seek a limiting instruction after it was admitted. For this reason, the jury were able to consider the testimony for the truth of the matter asserted, a use not contemplated by our rules of evidence. We therefore review this error for a substantial risk of a miscarriage of justice. Cf. Commonwealth v. Veiovis, 477 Mass. 472, 486-487, 496 (2017). "[I]n light of the magnitude of the evidence" against Ferrie, including the taped conversations, "we discern no substantial [risk] of a miscarriage of justice that could have resulted from the judge's failure to give [an instruction] sua sponte." Commonwealth v. Novo, 449 Mass. 84, 93 (2007).
b. Closing argument. Ferrie maintains that the prosecutor improperly characterized the evidence by indicating that Detective Thompson confirmed that Ferrie threatened Messina after he spoke with Lynch and Lasoff. "Prosecutors must limit the scope of their closing arguments to facts in evidence and the fair inferences that may be drawn therefrom." Commonwealth v. Valentin, 474 Mass. 301, 309 (2016). Statements made during closing arguments are considered in the context of the entire argument and in light of the judge's instructions to the jury. Commonwealth v. Carriere, 470 Mass. 1, 19 (2014).
The challenged statement is as follows:
"[Messina] has been consistent that [the threat] was said, and you have corroborating evidence that it was said, not on the 28th but on the 27th, inside the date range in this indictment. You know it because despite what [defense counsel] said, Detective Thompson followed up in the investigation. He called the landlord, Mr. Lasoff, and had a conversation with him. He called John Lynch, the man who was renting the apartment, and had a conversation with him. And when he spoke to them, he confirmed this conversation and applied for a complaint against [Ferrie]."
On appeal, Ferrie contends the prosecutor's statement was erroneous because it was based on impermissible hearsay that corroborated Messina's testimony, and further, that the testimony mischaracterized the evidence. Detective Thompson testified that he spoke to Lasoff after Messina complained that she was threatened by Ferrie. He stated that through his conversation with Lasoff he "actually confirmed that the opportunity to have the conversation [with Messina] took place," but did not testify to the substance of his conversation with Lasoff. The prosecutor's reference to this conversation itself was not erroneous as it was rooted in the evidence presented at trial, but to the extent that it suggested that he confirmed the content of the conversation with Lasoff, he misspoke. Moreover, the prosecutor's reference to a telephone conversation between Thompson and Lynch lacks support in the record.
The misstatements, however, do not require reversal. "In determining whether an error in closing argument requires reversal, we consider whether defense counsel made a timely objection; whether the judge's instructions mitigated the error; whether the error was central to the issues at trial or concerned only collateral matters; whether the jury would be able to sort out any excessive claims or hyperbole; and whether the Commonwealth's case was so strong that the error would cause no prejudice." Commonwealth v. Harris, 443 Mass. 714, 732 (2005).
The judge instructed the jury on three separate occasions that they were the sole and exclusive judges of the facts and that closing arguments were not evidence. See Commonwealth v. Bresilla, 470 Mass. 422, 438 (2015), quoting from Commonwealth v. Kozec, 399 Mass. 514, 517 (1987) ("[W]e must and do recognize that closing argument is identified as argument, the jury understand [ ] that, instructions from the judge inform the jury that closing argument is not evidence, and instructions may mitigate any prejudice in the final argument"). In addition, the evidence against Ferrie was strong, specifically, the jailhouse recordings that showed the existence of a plan between the defendants to prevent Messina from testifying. Treating the objections to closing argument as preserved, we are convinced that any error in the closing argument "did not influence the jury, or had but very slight effect."[7] Commonwealth v. Cheremond, 461 Mass. 397, 411 (2012), quoting from Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).
Freeman's appeal. Freeman contends that the judge erroneously denied him the opportunity to put on expert evidence regarding his defensive wounds ; the judge abused his discretion by admitting jailhouse telephone call recordings between Freeman and Ferrie and Freeman and his wife; and the Commonwealth should not have been able to access his jailhouse telephone calls without a search warrant.
a. Expert evidence. Prior to trial, the parties filed motions in limine to determine the admissibility of Dr. Carl Dahlberg's anticipated testimony about Freeman's defensive wounds. On the first day of trial, although he initially stated that Dahlberg was not qualified as an expert, the judge reserved his ruling on the motion pending voir dire of Dahlberg.[8] Dahlberg's voir dire occurred on the fourth day of trial. Before the voir dire, Freeman stated, "I am not going to put forth any concept of opinion as to how [the defensive] injuries were suffered at this point. I just would be using [Dahlberg] to provide information with regard to the gravity, nature and severity of the injuries. So I am not going to go down that particular road.... I'm not going to go into the defensive wounds and all of that issue."
On appeal, Freeman now contends that the judge erroneously denied him the opportunity to offer expert evidence regarding his defensive wounds. As a general rule, we do not allow "a lawyer [to] try a case on one theory and then, having lost on that theory, argue before an appellate court ... issues which might have been, but were not, raised at the trial." Commonwealth v. Olson, 24 Mass. App. Ct. 539, 544 (1987). Thus, we treat this issue as waived, and reverse only if we find that there has been error, and the error created "a substantial risk of a miscarriage of justice." Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). The judge did not abuse his discretion by declining to rule on a matter that was no longer before him. See Commonwealth v. Feliciano, 442 Mass. 728, 737 (2004).
b. Jailhouse recordings. Freeman maintains that the judge abused his discretion by admitting jailhouse telephone call recordings in evidence because they were more prejudicial than probative. "The relevance threshold for the admission of evidence is low." Commonwealth v. Adjutant, 443 Mass. 649, 657 n.11 (2005), quoting from Commonwealth v. Arroyo, 442 Mass. 135, 144 (2004). The judge's determination of whether the evidence is relevant and more prejudicial than probative "will be upheld on appeal absent palpable error." Commonwealth v. Marrero, 427 Mass. 65, 67-68 (1998), quoting from Commonwealth v. Valentin, 420 Mass. 263, 270 (1995).
We note that the judge conducted a thorough examination of the recorded calls before determining their admissibility. He excluded one recording completely and another was redacted. The remaining recorded calls were relevant because Freeman admitted to assaulting Messina, discussed his state of mind during the assault (relevant to prove that his actions were not self-defense), and showed that the defendants established a plan to intimidate Messina to prevent her from testifying against Freeman. In balancing probative value against risk of prejudice, the fact that the evidence goes to a central issue in the case weighs in favor of admission. See Commonwealth v. Ridge, 455 Mass. 307, 322-323 (2009) ; Mass. G. Evid. § 403 (2017). The judge did not abuse his discretion in admitting the recordings.
c. Privacy interest. Finally, Freeman suggests that the Supreme Judicial Court's ruling in Matter of a Grand Jury Subpoena, 454 Mass. 685, 688 (2009), which holds that no privacy interest exists in recorded inmate telephone conversations when the inmate is on notice that the calls were being recorded, is in error. We decline to extend relief beyond those boundaries defined by the Supreme Judicial Court.
Judgments affirmed.

He stated to his wife (a woman other than Ferrie), "You think I wanna be sitting here because I beat up some fucking dope head?"

Freeman stated that Ferrie needed to "prevent these motherfuckers from being at court" and said, "I can't have the bitch come to court and tell a fucking story about how I beat her the fuck up."

Lynch believed Messina told him about the threat on a weekend day because he had played golf that day and he did not play golf during the week.

The prosecutor did not argue, and the judge did not make a finding of, recent contrivance, only that the statements were consistent.

The Commonwealth maintains that the error is unpreserved because the nature of the objection changed between trial and appeal. For purposes of the appeal, we treat the objection as preserved.

Freeman asked the judge, "with regards to a voir dire at the close of the Commonwealth's case, that the Court just hold off on making a ruling on [the admissibility of Dahlberg's testimony] and allow at that time for me to make the argument and show the case law." In response, the judge stated, "All right. The Court reserves on the motion for voir dire."